# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-DP-00509-SCT

*ANTHONY JOE DOSS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/93 |
| TRIAL JUDGE: | HON. JAMES C. SUMNER |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | H. LEE BAILEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY (DIRECT APPEAL) |
| DISPOSITION: | AFFIRMED - 5/23/96 |
| MOTION FOR REHEARING FILED: | 6/6/96 |
| MANDATE ISSUED: | 12/22/97 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## INTRODUCTION

¶1. The case before the Court today involves the capital murder conviction of Anthony Joe Doss (hereinafter Doss) for the killing of Robert C. "Bert" Bell. Both the conviction and sentence were appealed by Doss. However, after thoroughly reviewing the record, Doss has failed to present any plain errors, or cumulative near errors to disturb his conviction and sentence. Accordingly, based upon the analysis *infra*, affirmance of both the conviction and the sentence are warranted and required by this Court.

## STATEMENT OF THE CASE

¶2. The procedural history of this case began with the capital murder indictment of Anthony Joe Doss on July 19, 1991, in Grenada County, Mississippi for killing Robert C. "Bert" Bell with malice aforethought while engaged in the commission of the crime of armed robbery in violation of Miss.

Code Ann. Section 97-3-19(2)(e). Doss's trial was held in the Circuit Court of Grenada County, Mississippi on March 29, 1993. Doss was ultimately convicted and sentenced to death.

¶3. After hearing arguments and reviewing evidence during the sentencing phase of the trial, the jury's verdict of death was as follows:

"We, the jury, unanimously find beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder:

(3) That the defendant, Anthony Doss, intended the killing of Robert C. "Bert" Bell take place &

(4) That the defendant, Anthony Doss, contemplated that lethal force would be employed during the commission of the crime of armed robbery."

"We, the jury, unanimously find that the aggravating circumstance(s) of:

1. The defendant, Anthony Doss, was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.[1]

2. The capital murder of Robert C. "Bert" Bell was committed while the defendant was engaged or was an accomplice in the commission of armed robbery.

3. The capital murder of Robert C. "Bert" Bell was committed for the purpose of avoiding or preventing a lawful arrest.

[said circumstances] are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we further find unanimously that the defendant, Anthony Doss, should suffer death.[2]

¶4. Doss's post-verdict motions for a J.N.O.V. and a new trial were denied on April 2, 1993. Doss now appeals the conviction and the sentence. Naturally aggrieved to being sentenced to death, Doss appeals to this Court requesting review of the following twenty-four issues.

## GUILT PHASE ISSUES

**I. ANTHONY DOSS WAS ENTITLED TO A LESSER INCLUDED OFFENSE INSTRUCTION UNDER THE FEDERAL AND STATE CONSTITUTIONS AND MISSISSIPPI LAW.**

**II. JURY INSTRUCTIONS NO.S-3 AND NO.S-4 AT THE GUILT PHASE RELIEVED THE STATE OF THE BURDEN OF PROVING ALL THE ELEMENTS OF THE CRIME WITH WHICH ANTHONY DOSS WAS CHARGED, THEREBY VIOLATING THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.**

**A. INSTRUCTION NO.S-3**

**B. INSTRUCTION NO.S-4**

C. ACCOMPLICE LIABILITY

III. DURING THE SELECTION OF THE JURY THE TRIAL COURT IMPERMISSIBLY INSTRUCTED THE JURY THAT A VALID STATUTORY MITIGATING FACTOR IS IRRELEVANT AND IMMATERIAL, IN VIOLATION OF MISSISSIPPI LAW AND THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.

IV. THE TRIAL COURT, IN VIOLATION OF DOSS'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS, DISCOURAGED POTENTIAL JURORS FROM DISCLOSING ANY PERSONAL RACIAL BIAS.

V. BECAUSE OF LEADING QUESTIONS BY THE TRIAL JUDGE DURING THE SELECTION, DOSS'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW WERE VIOLATED.

VI. THE TRIAL COURT ERRED IN EXCUSING JURORS LUMAS AND MOORE FOR CAUSE IN VIOLATION OF MISSISSIPPI LAW AND THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.

VII. THE TRIAL COURT ERRED IN FAILING TO EXCUSE FOR CAUSE JUROR SUSAN HONEYCUTT, IN VIOLATION OF MISSISSIPPI LAW AND THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.

VIII. THE ADMISSION OF TEN GRUESOME PHOTOGRAPHS OF THE DECEASED VIOLATED RULE 403 OF THE MISSISSIPPI RULES OF EVIDENCE AND THE STATE AND FEDERAL CONSTITUTIONS.

IX. THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-1 AT THE GUILT PHASE WHICH CONSTRUCTIVELY AMENDED THE INDICTMENT BY FAILING TO REQUIRE THAT THE JURY FIND THAT THE KILLING BE DONE WITH MALICE AFORETHOUGHT WHERE THE INDICTMENT CHARGED KILLING WITH MALICE AFORETHOUGHT, VIOLATING THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.

X. THE TRIAL COURT ERRED IN ALLOWING THE STATEMENT OF ANTHONY DOSS INTO EVIDENCE, IN VIOLATION OF THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

XI. THE TRIAL COURT ERRED IN NOT REDACTING FROM THE TRANSCRIPT OF THE TAPED CONFESSION THE PORTION DEALING WITH OTHER CRIMES OF ANTHONY DOSS, IN VIOLATION OF DOSS'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.

## SENTENCING PHASE ISSUES

XII. THE TRIAL COURT VIOLATED THE UNITED STATES AND MISSISSIPPI

CONSTITUTIONS AND MISSISSIPPI LAW IN SUBMITTING THE "AVOIDING ARREST" AGGRAVATING CIRCUMSTANCE TO THE JURY.

XIII. THE TRIAL COURT ERRED IN SUBMITTING TO THE JURY THE ROBBERY-MURDER AGGRAVATING CIRCUMSTANCE IN VIOLATION OF THE UNITED STATES CONSTITUTION AND STATE LAW.

XIV. THE TRIAL COURT ERRED IN SUBMITTING TO THE JURY THE AGGRAVATING CIRCUMSTANCE THAT DOSS HAD BEEN CONVICTED OF ANOTHER CAPITAL OFFENSE, IN VIOLATION OF DOSS'S RIGHTS UNDER THE UNITED STATES CONSTITUTION AND MISSISSIPPI LAW.

XV. IN NOT FULLY INFORMING THE JURY OF DOSS'S SENTENCE OF IMPRISONMENT IMPOSED BY THE STATE OF TENNESSEE AND THE RAMIFICATIONS OF A LIFE SENTENCE IN THIS CASE, THE TRIAL COURT VIOLATED DOSS'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTIONS AND MISSISSIPPI LAW.

XVI. THE TRIAL COURT'S ANTI-SYMPATHY INSTRUCTION COUPLED WITH DENIAL OF A MERCY INSTRUCTION VIOLATED THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

XVII. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S INSTRUCTION D-S4 TELLING THE JURORS THAT THEY NEED NOT BE UNANIMOUS IN FINDING MITIGATING CIRCUMSTANCES AND ALSO IN IMPROPERLY INSTRUCTING THEM THAT THEY HAD TO BE UNANIMOUS BEFORE THEY COULD FIND A MITIGATING CIRCUMSTANCE.

XVIII. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY AT THE SENTENCING THAT IT COULD CONSIDER "THE DETAILED CIRCUMSTANCES OF THE OFFENSE."

XIX. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT IN ORDER TO RETURN A SENTENCE OF LIFE IMPRISONMENT IT HAD TO FIND THAT THE MITIGATING FACTORS OUTWEIGH THE AGGRAVATING CIRCUMSTANCES.

XX. THE TRIAL COURT ERRED IN SUBMITTING TO THE JURY IN THE SENTENCING PHASE OF THE TRIAL THE FORM OF THE VERDICT AS CONTAINED IN SENTENCING INSTRUCTION C-1.

XXI. THE FINDINGS BY THE JURY AT THE SENTENCING PHASE WERE TOO UNCERTAIN AND UNRELIABLE TO SUPPORT THE SENTENCE OF DEATH, VIOLATING DOSS'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

XXII. THE IMPROPER CLOSING ARGUMENT BY THE PROSECUTOR VIOLATED ANTHONY DOSS'S RIGHTS UNDER THE UNITED STATES AND

**MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.**

**XXIII. THE DEATH PENALTY IS DISPROPORTIONATE PUNISHMENT HERE GIVEN THE CIRCUMSTANCES OF THE CRIME.**

**XXIV. THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.**

## STATEMENT OF THE FACTS

¶5. The facts of this case began on May 6, 1991, outside a small grocery store, Sparks Stop-N-Shop (hereinafter Sparks), on Cadaretta Road in rural Grenada County, Mississippi. Anthony Joe Doss (Doss), Robert McKinney James (hereinafter James), Frank Coffey (hereinafter Coffey), and Freddie Bell (hereinafter Freddie)[3] were sitting outside Sparks grocery store at a picnic table when the events giving rise to the subsequent murder began to unfold.[4]

¶6. James testified that a few minutes before the scene at the picnic table occurred, that they all went into Sparks and bought some beer and potato chips.[5] They subsequently consumed the products together outside Sparks when the crimes began to develop. According to James, Freddie spoke to the group and stated that he needed some money to get to Memphis. Doss was the only one who responded and stated that he was waiting for his sister to bring him a check so that he could go to Chicago. Freddie, according to James, Coffey and Doss, responded that he could not wait and that he needed money immediately. Therefore, according to all three of the other persons present, Freddie asked the group to join him in robbing Sparks.

¶7. James and Coffey testified that they immediately told Freddie that they did not want anything to do with robbing Sparks and would not join Freddie's plan. James and Coffey testified that Freddie then pulled out two guns to be used in the robbery and gave one to Doss who accepted it. Furthermore, according to James, Freddie told Doss before they entered Sparks that they should "go in shooting" to complete the robbery effectively.

¶8. James testified that he did not hear Doss say anything in response to Freddie's statement that they should "go in shooting." Coffey testified that when Freddie gave Doss the gun, Doss stated, "Let's go. Let's go do it." Doss admits that he was given a .25 caliber gun outside the store by Freddie to facilitate the robbery. Doss testified that (1) he knew that specific gun would not fire,[6] (2) that he did not agree to hurt anyone, and (3) that he was forced at gunpoint by Freddie to be involved.[7] Nevertheless, Doss admitted that he went into the store to rob it.

¶9. Once Freddie and Doss each had a gun and apparently had agreed to rob Sparks, James and Coffey left them for Coffey's home nearby. According to Coffey and James, Doss and Freddie entered the store and a few seconds later they heard gun shots coming from Sparks. James and Coffey also heard the store clerk, "Bert" Bell hollering as the shots were fired. [8]

¶10. Exactly what happened during the commission of the robbery can naturally only be explained by the robbers and Bell. Unfortunately, Bell is dead, Freddie did not testify, and Doss's stories change over the course of time.[9] However, once the shooting ceased, Freddie and Doss ran from the store and headed up the same road that James and Coffey were on, where Doss and Freddie met them.

James testified that Doss was given the .25 caliber gun before entering Sparks and that after the robbery Freddie had the original .22, as well as the .38 which was taken from Sparks. According to Coffey, Doss then said that he shot Bell in the neck and that it caused him to "hung lower" because he had "emptied his gun into" Bell. Coffey testified that Freddie also admitted to shooting Bell, but did not offer any further comments. James also testified that Doss admitted to shooting Bell.

¶11. After Doss and Freddie admitted to shooting Bell, Freddie said that he needed to go to Memphis. However, before they left for Memphis, Freddie allegedly threatened to kill James, stating that he did not want any witnesses. James testified that Doss then stepped in and prevented Freddie from killing James.[10] James and Coffey confirmed that Doss and Freddie had stolen a pistol, a box of shells, and a gray money bag from Sparks. James also confirmed, as did Doss himself, that Doss admitted to unsuccessfully trying to open up the cash register.

¶12. Subsequently, Freddie, Doss and Coffey got Bernard Gladney to pick them up and take them to Memphis leaving James in Grenada County. Coffey testified that he remembered Freddie wanting to go back to Grenada County to shoot James so that there were no witnesses and that Doss said that he "was ready to do it" too. Doss denied suggesting to Freddie that they should go back and shoot James. Freddie, Doss and Coffey were arrested in Memphis shortly thereafter.[11]

¶13. Coffey was arrested and gave a Statement on May 9, 1991, in the Memphis police department about the events of the Sparks shooting as did Freddie and Doss. Coffey admitted on cross-examination that he was being charged with accessory to murder, but had not yet been to trial. Naturally then, Coffey was cross-examined to portray him as a government witness simply testifying to cut a deal.

¶14. Among some of the evidence used by the State in this case was a Statement made by Doss at the Memphis police station to Grenada County criminal investigator Buster Grantham (hereinafter Grantham) and Bruce Patridge. It was during this investigation by Grantham that Doss, after signing a Miranda Rights form, Stated that Coffey was the person who shot Bell with the .38. However, Doss subsequently admitted on cross-examination that his Statement about Coffey being involved was a complete fabrication. Doss contends that the Statement he gave at trial was the "truth" and that the Memphis Statement, which he admitted was riddled with lies, was given because he was "scared" and "knew they wouldn't believe me."[12] Doss admitted saying to Coffey and James that he shot Bell, but testified that that was a lie, as well, so that Freddie would not hurt him. Accordingly, it appears that the jury found Doss lacking in credibility from his admitted initial attempt to shift the blame for the murder to another in order to exonerate himself.

¶15. The State's physical evidence included, among other things, the store owner's, James Shelby Sparks, testimony that a .38 caliber gun was taken from the store during the robbery which was matched to guns recovered following the arrests of the suspects.[13] Additionally, the State had ballistics matches between the bullets retrieved from Bell's body and the .38 caliber gun. The State also introduced evidence from the Mississippi Crime Laboratory matching the fingerprints from the coke box behind the counter with those of Doss.

## DISCUSSION OF ISSUES

## GUILT PHASE ISSUES

## I. ANTHONY DOSS WAS ENTITLED TO A LESSER INCLUDED OFFENSE INSTRUCTION UNDER THE FEDERAL AND STATE CONSTITUTIONS AND MISSISSIPPI LAW.

¶16. This Court has "repeatedly held that the accused is entitled to have the jury instructed that it may consider convicting him of a lesser offense only where there is in the record an evidentiary basis therefor." *McGowan v. State*, 541 So. 2d 1027, 1028 (Miss. 1989); *Lee v. State*, 469 So. 2d 1225, 1230 (Miss. 1985). However, "[s]uch instructions should not be granted indiscriminately, nor on the basis of pure speculation." *McGowan v. State*, 541 So. 2d 1027, 1028 (Miss. 1989); *Mease v. State*, 539 So. 2d 1324, 1329 (Miss. 1989). Also, "the accused is not entitled to the lesser offense instruction where the evidence that proves the guilt of the lesser offense necessarily proves his guilt of the principal charge." *McGowan v. State*, 541 So. 2d 1027, 1029 (Miss. 1989); *Rowland v. State,* 531 So. 2d 627, 631-32 (Miss. 1988).

¶17. As for this case however, the question under this issue is whether or not robbery is a lesser-included offense to capital murder while using robbery as the underlying felony. Doss alleges that the trial court erred because the jury was only given the choice of either convicting Doss of capital murder for "unlawfully, willfully and feloniously killing Bert Bell . . . . while Doss was engaged in the crime of armed robbery" or "acquittal."[(14)] Doss maintains that this Court in *Abram v. State*, 606 So. 2d 1015, 1035 (Miss. 1992) set forth that there should be "three plausible evidentiary" theories for the jury to choose among. The additional theory, stated in *dicta* in *Abram* and omitted from Instruction S-1, was that the jury also had the option to only convict Doss of armed robbery should they find that he was completely unknowing as to any contemplated killings or completely unknowing that lethal force would be used in the robbery.

¶18. *Abrams* did not involve a question of whether it was improper to exclude a mere armed robbery instruction as one was given in *Abram*, but rather whether it was proper for the trial court to deny Abram a simple malice aforethought murder instruction. *Id*. at 1035. The trial court, as did this Court, found that the evidence did not warrant a simple malice aforethought murder instruction because there was no evidence that Abram had the requisite specific intent to support the instruction. *Id.* Therefore, this Court held that it was proper for the trial court to have refused the defense's requested simple murder instruction. *Id*.

¶19. The State maintains that robbery is neither a lesser included offense nor a component to capital murder, making this assignment of error without merit. Accordingly, the State contends that robbery is not a lesser included offense as it is not a component of murder. Therefore, the denial of an instruction regarding such does not constitute an error by the trial judge according to the State. Based upon our case law, we agree.

¶20. This Court recently addressed essentially the identical argument in *Ballenger v. State,* 667 So. 2d 1242 (Miss. 1995). *Ballenger* Stated that the language from *Abrams*, which is quoted by Doss in support of his argument that he was entitled to a pure robbery instruction alone in conjunction with the other instructions, was mere *dicta*. *Id.* at 1254. The *Ballenger* court went further to state that the principal in *Cannaday v. State,* 455 So. 2d 713, 724-25 (Miss. 1984), that the underlying felony in a felony-murder case is not a lesser included offense, was not overruled by *Abrams*. *Ballenger* at

1254; *Cf. Ross v. State,* 603 So. 2d 857, 866 (Miss. 1992) and *Hailey v. State*, 537 So. 2d 411, 414 (Miss. 1988). Accordingly, the most recent restatement of the law in this State, regarding whether or not the underlying felony in a felony-murder case is a lesser-included offense entitling the defendant to a separate instruction, clearly states that a defendant is not entitled to such an instruction as the language from previous cases used as the basis for such an argument has been held to be mere *dicta*. *Ballenger v. State,* 667 So. 2d 1242, 1254 (Miss. 1995). Therefore, this issue is without merit.

### II. JURY INSTRUCTIONS NO.S-3 AND NO.S-4 AT THE GUILT PHASE RELIEVED THE State OF THE BURDEN OF PROVING ALL THE ELEMENTS OF THE CRIME WITH WHICH ANTHONY DOSS WAS CHARGED, THEREBY VIOLATING THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

### A. INSTRUCTION NO.S-3

### B. INSTRUCTION NO.S-4

### C. ACCOMPLICE LIABILITY

### II A. Instruction No. S-3

¶21. Instruction No. S-3 which was given and alleged as error is as follows:

The Court instructs the jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all, and all are equally responsible for the acts of each in the commission of such felony.

¶22. Doss alleges that the above instruction was erroneous because it could allow a reasonable juror to conclude that the intent of Freddie Bell could be imputed to Doss since it lacked any aiding, assisting or encouraging language for an accomplice. Therefore, Doss maintains that such an instruction relieved the jury from having to also find that Doss had any such intent and because the instruction did not define "engaged in the commission of a felony." According to Doss, to allow such an instruction would permit "[D]oss to be convicted of capital murder without proof that he did or intended to do anything."

¶23. The State's first defense to this assignment of error is that Doss is procedurally barred. Doss is alleged as being barred because Doss objected at trial to the submission of both of these instructions on the ground that they "[d]o not take into account the possibility of duress on the part of the defendant." The State therefore argues, *citing Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993), that Doss's appellate attack of the instructions on the ground that they "relieved the State of the burden of proving the element of intent" should be barred as it is different from that argued at trial.

¶24. *Conner* held that the defendant was procedurally barred from arguing a different ground on appeal than that argued at trial. *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993). Citing *Stringer v. State*, 279 So. 2d 156, 158 (Miss. 1973), the *Conner* Court stated that "[A]n objection on one or more specific grounds constitutes a waiver of all other grounds." *Id*. Accordingly, the State is correct in asserting the procedural bar on this issue as such is supported by the record.

¶25. The procedural bar aside, this Court's standard of review in looking at jury instructions was

stated in *Hickombottom v. State*, 409 So. 2d 1337, 1339 (Miss. 1982). The *Hickombottom* Court stated:

> In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. *Knight v. State*, 57 So. 2d 161 (Miss. 1952), and *Norman v. State*, 385 So. 2d 1298 (Miss. 1980).

*Hickombottom v. State*, 409 So. 2d 1337, 1339 (Miss. 1982).

¶26. Naturally then, the State contends that if the Court were to presume that an error was present in the instruction, which it contends is not the case in light of *Enmund v. Florida*, 458 U.S. 782, 799 (1982), *Mackbee v. State*, 575 So. 2d 16, 34 (Miss. 1990) and *Allman v. State*, 571 So. 2d 244, 248 (Miss. 1990), that based upon our standard of review, the Court should nevertheless find that the jury was properly instructed on the whole because the instruction was read in conjunction with instruction S-1 and S-1-A. Doss contends in his reply brief that S-1 and S-1-A do not solve any deficiencies in S-3 and S-4, but rather further confused the jury. This Court finds that the jury was properly instructed and that the jury found the necessary *Enmund* factors which were based in fact sufficient to determine Doss's culpability to warrant the guilt and sentence imposed upon him.

¶27. Doss additionally contends that this Court's holding in *Hornburger v. State*, 650 So. 2d 510, 514 (Miss. 1995), which found an instruction not requiring the State to prove that the defendant committed all of the elements to be harmless error, is applicable, yet cannot be held as harmless error in light of *Hill v. State*, 432 So. 2d 427, 446 (Miss. 1983) (Justice Robertson's concurring in part and dissenting in part). ("What may be harmless error in a case with less at stake becomes reversible error when the penalty is death." *quoting Irving v. State*, 361 So. 2d 1360, 1363 (Miss. 1978)).

¶28. The instruction in *Hornburger* is readily distinguishable from these instructions. The instruction in *Hornburger* allowed the jury to find him guilty of burglary if it found that he had done any act which was merely an element of burglary, without having to also find that he committed acts for all elements of the crime. *Hornburger v. State*, 650 So. 2d at 514. The instructions in this case are not analogous to the one held to be improper, yet harmless, in *Hornburger*.

¶29. This issue is procedurally barred and alternatively without merit.

### II B. Instruction No. S-4

¶30. Instruction No. S-4 is alleged by Doss as being an erroneous instruction as well. It reads as follows:

> The Court instructs the jury that under the laws of the State of Mississippi anyone who aids, assists and encourages in the commission of a crime is deemed a principle to that crime. Therefore, if you find from the evidence in this case beyond a reasonable doubt that the defendant, Anthony Doss, aided, assisted, and encouraged another in the felonious crime of capital murder, then Anthony Doss is a principle to that crime.

¶31. Doss contends that this instruction was erroneous because it did not require that the encouragement or aid of the accomplice be given at any particular time or place. Doss therefore

asserts that the vagueness of the instruction allowed the jury to convict him of capital murder if it found that Doss offered encouragement to Bell either before or after the crime was committed even if Doss did not participate in the robbery or the murder. Doss additionally contends that the instruction allowed the jury to convict without having to find that Doss had the intent to commit the capital murder.

¶32. This instruction is not specifically addressed in the State's brief. Rather, the State chose to address all three subparts together, as opposed to individually. Instruction S-3 is alleged as being void of defect because of *Mackbee v. State*, 575 So. 2d 16, 34 (Miss. 1990) and *Allman v. State*, 571 So. 2d 244, 248 (Miss. 1990), wherein the Court stated, respectively, that the term "without authority of the law" properly instructed a jury on the element of felonious intent, and that "feloniously" meant unlawfully with the intent to commit a felony-grade crime. Therefore, the State asserts that *Mackbee* and *Allman* provide that the instructions were proper because they included the requirement that the jury find that a felony or felonious crime occurred. We agree.

### II. C. Accomplice Liability

¶33. Doss contends here that the jury was improperly instructed concerning accomplice liability under the two aforementioned instructions because the jury was not required to find that Doss possessed the *mens rea* or "community of intent" for the commission of the crime charged as required by *Welch v. State*, 566 So. 2d 680, 685 (Miss. 1990).[15] Doss further asserts that said instructions were mere "abstract statements of law" as prohibited by *Kidd v. State*, 258 So. 2d 423, 428 (Miss. 1972).

¶34. The State contends that Doss is procedurally barred from raising all three arguments under Issue II. *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993) (an objection on one or more specific grounds constitutes a waiver of all other grounds). The State asserts that Doss's appellate objection to said instructions was waived because during trial the objection was because the instructions "do not take into account the possibility of duress on the part of the defendant." Doss's failure to state the 'lack of intent' objection was thereby waived according to the State. Case law supports this position. Alternately, this Court does not find that the jury was improperly instructed on the whole, rendering this issue without merit.

> **III. DURING THE SELECTION OF THE JURY THE TRIAL COURT IMPERMISSIBLY INSTRUCTED THE JURY THAT A VALID STATUTORY MITIGATING FACTOR IS IRRELEVANT AND IMMATERIAL, IN VIOLATION OF MISSISSIPPI LAW AND THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.**

¶35. Doss asserts here that the trial judge erred when he made the following comment during voir dire:

> BY MR. BAILEY: Is that it? All right. How many of you feel that age makes a difference as to whether or not a person gets the death penalty? You can give it to a young person as well as you could give it to an older person? Does anybody feel that it does make a difference?

> BY A JUROR: You talking about an adult?

BY MR. BAILEY: I'm talking about someone that's around the age of 18 or 19 as opposed to an older person up in the say 60's or 70's.

BY A JUROR: May I ask a question? Are you talking about someone that's able to be tried as an adult?

BY MR. BAILEY: That's right. That's right.

BY A JUROR: What is the question, please?

BY MR. BAILEY: Does anybody --- would it make any difference to any of you the age of the person? Could you give -- would you think twice about giving the death penalty to a person who was young as opposed to a person who was middle-aged, or a person that was an older person? Would age make any difference to any of you in giving the death penalty? Have I confused all of you? Answer me.

BY THE COURT: I think that it just doesn't make any difference.

BY MR. BAILEY: Does it make any difference to any of you? If it makes a difference to any of you, raise your hand. One hand. And sir your name?

BY JUROR JOE EDDIE LUMAS: Lumas.

¶36. Doss asserts that the above comment by the court was highly prejudicial, overrides Mississippi law[16] and violates the requirements of the Eighth Amendment and Article 3, Section 28 of the Mississippi Constitution. The comment by the judge is alleged by Doss as having made the jury believe that a valid mitigating factor was irrelevant to their evaluation.

¶37. The State counters this argument by asserting that Doss is procedurally barred because a contemporaneous objection was not made by Mr. Bailey. *Foster v. State*, 639 So. 2d 1263, 1270 (Miss. 1994). *Ballenger v. State*, 667 So. 2d 1242, 1251 (Miss. 1995) held that our familiar contemporaneous objection rule does apply to jury selection procedures. *See also, Cole v. State,* 525 So. 2d 365, 369 (Miss. 1987). Likewise, this Court has held that the contemporaneous objection rule also applies to comments by the trial judge. *Foster v. State*, 639 So. 2d 1263, 1286 (Miss. 1994); *See also, Cole v. State,* 525 So. 2d 365, 369 (Miss. 1987). However, Doss replies that the procedural bar and contemporaneous objection rule is inapplicable here as

> The purpose of a contemporaneous objection is to give the trial judge the opportunity to correct a trial error -- such as an improper argument by a prosecutor. Here, the trial judge interrupted defense counsel to make his comment. Given that the trial judge had just made the comment and obviously believed it to be correct, it would serve no purpose for defense counsel to make an objection asking the trial judge to take back what he had just said.

¶38. However, we find that Doss is procedurally barred. The procedural bar aside, which is supported by the record, the State asserts that the assigned error is meritless in light of the fact that age was given as a mitigating factor during the sentencing phase.[17] Therefore, because jurors are presumed to follow instructions, the judge's comment was rendered moot by the submission of the jury instruction according to the State. *Walker v. State*, 473 So. 2d 435, 440 (Miss. 1985). We

agree. The submission of age as a mitigator was curative to any error that may have occurred from the judge's comment. This issue is procedurally barred and alternatively, without merit.

### IV. THE TRIAL COURT, IN VIOLATION OF DOSS'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS, DISCOURAGED POTENTIAL JURORS FROM DISCLOSING ANY PERSONAL RACIAL BIAS.

¶39. Doss complains under this assignment of error that during voir dire the trial judge impermissibly discouraged the jurors from disclosing any racial bias. The transcript reflects the following exchange which is complained of by Doss under this alleged error:

> BY THE COURT: . . . Members of the jury panel, I want to touch on something that is critical, not just for me and not just for you, but for the State of Mississippi and this country. This is a crime in which the defendant is black and the victim is white. . . . I would be naive if I did not acknowledge that there is both a past and perhaps in someone's present, feelings that might cause you to view the situation differently simply because the victim and the defendant in this case are of different races. We certainly cannot have that here as a juror, and hopefully, the time will come when that is never present in our daily lives; that we look at each individual for what they are and make all of our decisions regarding that person, based upon that alone . . . In all candor, is there any person here that would indicate to me -- and I know you're in a crowd, and would not want to do that, but, certainly, you may speak to me in private if you have difficulty with this -- is there anyone here who would judge this case any different simply because the victim and the defendant in this case are of different races? I did not think so, and I do not think that anyone will come back to me in private, and I commend you for that.

¶40. Doss asserts that the above statement by the trial court denied him his constitutional right to a fair trial by an impartial jury in violation of *Morgan v. Illinois*, 112 S.Ct. 2222, 2229 (1992). Doss concedes that the trial judge's inquiry was proper, yet contends that the effect was "completely negated by the judge's statement discouraging the venire members from divulging such a prejudice." The State asserts a procedural bar against Doss on this issue, which the record supports, as an objection is nowhere to be found.

¶41. After reading the transcript in its entirety, it appears to this Court that the trial judge had the best of intentions in trying to discover anyone on the venire that was not impartial, although the manner in which the inquiry was done may have had a chilling effect.[18] Nevertheless, the record reflects that there was no contemporaneous objection. We suggest today to the circuit judges of Mississippi that such statements are not per se prejudicial, but recognize that they should avoid, if possible, making these types of statements. Accordingly, this Court finds that this issue is procedurally barred. *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993).

### V. BECAUSE OF LEADING QUESTIONS BY THE TRIAL JUDGE DURING THE SELECTION, DOSS'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW WERE VIOLATED.

¶42. Doss concedes that a trial judge is responsible for conducting a significant portion of the voir dire, *Hansen v. State*, 592 So. 2d 114, 128 (Miss. 1991), but nevertheless asserts that the trial judge asked improper leading questions which led to Doss having a jury lacking in impartiality. This form of

questioning allegedly violated his rights under the Sixth and Eighth Amendments to the United States Constitution, Article 3, Sections 26, and 28 of the Mississippi Constitution and principles of Mississippi law relating to voir dire. The examples given by Doss are the following:

**1st E.g.,** (Trial Court is conducting voir dire of all jurors who indicated that they knew the victim or any of his family members.)

BY THE COURT: Okay. Anyone else now? Then going back to the next row, starting with Mr. Layton. Anyone? All right, perhaps ya'll should start standing now. Mrs. Lundy?

BY JUROR JUDY M. (MRS. MITCHELL) LUNDY: Yes, sir. I didn't know Robert but I have known Bobby and Mabry (victim's grandparents) for years.

BY THE COURT: All right. Again, you've known them, as you would so many people in this community, having lived here all your life. Would it pose any problem for you here today? Is it a close, personal friendship, or simply to know who they are, and certainly be friends with them, but would it pose any problem?

BY JUROR LUNDY: Friends, but not real close friends.

BY THE COURT: All right friends. You know who they are but you don't see each other frequently. I take it you're telling me you could be fair and impartial, and that you would not [be] [sic] affected by it.

BY JUROR LUNDY: No, sir.

BY THE COURT: You're saying you would not be affected.

BY JUROR LUNDY: I would not be.

BY THE COURT: Thank you very much. Going on down that row, was there another hand? Yes ma'am.

¶43. The other alleged leading question by the trial judge concerning pre-trial publicity is as follows:

**2nd E.g.,** (The judge here was asking jurors about what they had heard about the case.)

BY THE COURT: Thank you very much. There was a hand all the way in the back. Yes, ma'am. Ms. Spence?

BY JUROR BARBARA ANN SPENCE: My daughter asked Gene Bell about it, and I don't know anything about it, as far as the particulars or anything, but I have heard some statements from Mr. Bell.

BY THE COURT: And, by Mr. Bell, you mean Bobby Bell?

BY JUROR SPENCE: Bobby Bell.

BY THE COURT: All right. Would that statement have been made in a social setting, or where would that statement have been made?

BY JUROR SPENCE: Made in front of some people at the softball park.

BY THE COURT: Again, at a softball field. Now, that would have been in a larger group or just overheard, or something like that. Now, would that in any way have affected you here today?

BY JUROR SPENCE: Not as far as my judgment about it.

BY THE COURT: No. You have formed no opinion, having heard that. Is that correct, Ms. Spence?

BY JUROR SPENCE: No, sir, I have not.

BY THE COURT: Thank you very much. All right, yes, Mr. Smith? Mr. Smith, excuse me, but you may have already indicated your problem because of your relationship. Thank you. As a pastor. All right. Anyone else, now? So, that would leave the rest of you having heard about this from the street talk and people, and that sort of thing, as you work; something like that somebody may have brought it up. I take it for those of you who raised your hand, there's nothing about what you've heard about it -- and, of course, when it occurred you may have heard a lot of talk. But, it's been about two years, so it certainly has died down. No one is affected by that I take it. Is that correct? All right, no one in this panel, then, is affected by anything that they have heard, seen or read about this event.

¶44. The State contends that this alleged error is without merit and procedurally barred. The record does not reflect a contemporaneous objection by defense counsel. There is also no basis asserted by the defense that it was prohibited from asking any questions to determine juror disqualifications. Accordingly, the State is correct in its position that this alleged error is procedurally barred and without merit. *Foster v. State*, 639 So. 2d 1263, 1301 (Miss. 1994); *Moawad v. State*, 531 So. 2d 632, 635 (Miss. 1988).

### VI. THE TRIAL COURT ERRED IN EXCUSING JURORS LUMAS AND MOORE FOR CAUSE IN VIOLATION OF MISSISSIPPI LAW AND THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.

¶45. Next, Doss contends that the trial judge erred in excusing veniremen Lumas and Moore for cause. The following is what transpired creating the alleged violation by the trial judge.

BY THE COURT: . . . . Mr. Lumas, is that your position, then? That no amount of evidence, makes no difference if the law authorizes it, you would not be able to vote for that.

BY JUROR LUMAS: I'm not sure, Your Honor.

BY THE COURT: All right. Then you're uncertain as to whether or not if you were a juror how you might be affected by that. Is that correct?

BY JUROR LUMAS: That is correct.

BY THE COURT: All right, thank you very much. . . . All right, the next row, starting with

Mrs. Eva Moore. Yes, Ms. Moore?

BY JUROR MOORE: I'm not sure.

BY THE COURT: You are unsure as to whether or not you could do that is that correct?

BY JUROR MOORE: Yes, sir.

BY THE COURT: Both of you would -- is -- your position, Ms. Moore, is like the gentlemen before you there, that is, you are unsure as to whether or not, once you were a juror, you could abide by my instructions, even though the law authorized it and the evidence warranted it, is that correct?

BY JUROR MOORE: Yes, sir.

BY THE COURT: All right, thank you very much.

¶46. The record is a little unclear about what transpired once counsel for both parties and the judge convened in chambers. Doss alleges that the trial judge excused jurors Lumas and Moore for cause *sue sponte* without first receiving a request by either party as purportedly required by Rule 5.06 of the Mississippi Uniform Criminal Rules of Circuit Court, now Rule 10.01, Jury Selection, of the Uniform Circuit and County Court Rules. After reading the record in its entirety, it appears that the judge proceeded with the State's submitted list followed by the defendant's list. The following is the transcript of the in-chamber jury selection proceedings.

BY THE COURT: Gentlemen, these are the ones I have marked off for cause. . . .

BY MR. EVANS: You skipped 3, Judge.

BY THE COURT: . . . . #51, Lumas; . . . . #63, Moore; #64, Moore; #65, Moore;. . . . Any more for cause from the State?

. . . .

BY THE COURT: All right, from the defendant for cause?

BY MR. BAILEY: Let's see, judge.

¶47. As the record reflects, and as pointed out by the State, Doss never made a contemporaneous objection to either Lumas or Moore on this basis.[19] Accordingly, there is a procedural bar against Doss on this issue. *Foster v. State*, 639 So. 2d 1263, 1301 (Miss. 1994).

¶48. The procedural bar aside, the merits of the issue are argued as follows.[20] Doss asserts that the judge's *sue sponte* actions amounted to error by "unilaterally announcing that the jurors were being excluded" in violation of Rule 5.06 of the Mississippi Uniform Criminal Rules of Circuit Court.[21] However, it appears that the State first submitted a list followed by the defense and that the trial judge was not acting *sue sponte*, although the record is a little vague.[22]

¶49. Doss asserts that the uncertainty displayed by jurors Lumas and Moore was not sufficient to arise to the level required for cause under *Morgan v. Illinois*, 112 S. Ct. 2222, 2231 (1992) and

*Wainwright v. Witt,* 469 U.S. 810, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). The State counters by pointing to *Fuselier v. State*, 468 So. 2d 45, 53-55 (Miss. 1985), wherein this Court adopted the proper test under *Wainwright*, and more recently reiterated it in *Hansen v. State*, 592 So. 2d 114, 128 (Miss. 1991). *Hansen*, in discussing the substantive parameters of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), noted that [in discussing the removal of venire members]

> exclusion is permissible though the juror's opposition is less than unequivocal, her vote against death less than automatic. The Court may exclude the juror where it

> is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. *Wainwright v. Witt*, 469 U.S. 412, 424-25, 105 S.Ct. 844, 852-53, 83 L.Ed.2d 841, 851-52 (1985); *Pinkney v. State*, 538 So. 2d at 345.

*Hansen*, 592 So. 2d at 128.

¶50. The State therefore contends that the trial judge in this case was "left with the definite impression that a prospective juror [jurors Lumas and Moore] would be unable to faithfully and impartially apply the law." The Court notes that the record reflects the absence of a contemporaneous objection which is required by *Cannaday v. State*, 455 So. 2d 713, 718-19 (Miss. 1984) for preservation of a *Wainwright* or *Witt* issue for appeal.

¶51. In sum, Doss is procedurally barred. *Foster v. State*, 639 So. 2d 1263, 1301 (Miss. 1994). Furthermore however, the merits of the claim must be denied based upon *Hansen*.

### VII. THE TRIAL COURT ERRED IN FAILING TO EXCUSE FOR CAUSE JUROR SUSAN HONEYCUTT, IN VIOLATION OF MISSISSIPPI LAW AND THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.

¶52. Doss alleges that the trial court's denial of his challenge for cause request against juror Susan Honeycutt (hereinafter Honeycutt) constitutes reversible error because of her familial relationship with the prosecuting assistant district attorney, Kevin Horan (hereinafter Horan). Honeycutt came forward during voir dire when the court asked if anyone was related by blood or marriage to either the defendant's counsel or the attorneys for the State. She told the court that her father and Horan's mother were first cousins. When asked of her relationship with Horan, she responded that she had not seen Horan since they were children. When asked if her relationship with Horan would "make any difference or pose any problem," Honeycutt responded, "I don't know as it would."

¶53. Defense counsel, Horan, and the trial judge, subsequently met in chambers to conduct the parties' challenges. The State tendered its list for cause. The defense then tendered its list of challenges for cause which sought to strike Honeycutt. The defense's request was denied once the trial judge discovered that Horan had not seen Honeycutt in the year and a half that he lived there, finding that there was not a strong relationship which might interfere with Honeycutt's judgment.

¶54. Peremptories began and the defense used its twelfth peremptory on juror #44. Honeycutt was juror #45. The defense did not ask for additional peremptories and eventually Honeycutt sat on Doss's jury.

¶55. Doss asserts that Honeycutt's response to the question of whether her familial relationship with Horan would affect her judgement "indicated a lack of impartiality and bias" in violation of *Billiot v. State*, 454 So. 2d 445, 457 (Miss. 1984) and more recently *Chase v. State,* 645 So. 2d 829, 844 (Miss. 1994). The State asserts that such a response does not indicate bias or inability to be impartial. Additionally, citing *Mettetal v. State*, 615 So. 2d 600, 603 (Miss. 1993), the State contends that Doss has failed to illustrate the requirement that the defendant had an incompetent juror in his jury because of an erroneous ruling by the trial judge in failing to strike a juror that should have been stricken. *See also*, *Chisolm v. State*, 529 So. 2d 635, 639 (Miss. 1988).

¶56. With regard to the parties' arguments, this Court Stated in *Woodward v. State*, 533 So. 2d 418, 424 (Miss. 1988) that:

> Generally, a juror removed on a challenge for cause is one against whom a cause for challenge exists that would likely affect his competency or his impartiality at trial. *Billiot v. State*, 454 So.2d 445, 457 (Miss.1984). Under *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the U.S. Supreme Court held that deference must be paid to the trial judge who sees and hears the juror and that the trial judge's determination that a juror is biased will not be reversed where it is supported by the record.

> "It is well founded that the trial judge has the discretion to excuse potential jurors for cause if the court believes the juror could not try the case impartially." *Burt v. State*, 493 So.2d 1325, 1327 (Miss.1986). This Court will not lightly interfere with a finding of fact made by the trial judge in a criminal case, and it will reverse only when it is satisfied that the trial court has erred in holding a juror competent, when this Court is clearly of the opinion that he was not a competent juror. *Dennis v. State*, 91 Miss. 221, 44 So. 825 (1907). *See also Norris v. State*, 490 So.2d 839 (Miss.1986); *Weaver v. State*, 497 So.2d 1089, 1094 (Miss.1986) (a physical disability, such as deafness, is sufficient to support a challenge for cause).

¶57. At best, Honeycutt had a distant relationship with Horan. She had not seen him in the year and a half that he had lived there and they were not currently involved in any manner with one another. Additionally, they had not had a relationship since they were small children. When asked of her ability to be impartial to sit in judgment of Doss unaffected by her distant familial relation with Horan, she did not evidence any information to warrant her removal for cause. Therefore, the trial judge's denial of Doss's request for a cause strike against Honeycutt was not an abuse of discretion in this case.

¶58. The Court finds that the trial judge in this case did not abuse his discretion regarding this issue. The trial judge conducted the requisite inquiry for determining Honeycutt's competency and found that she appeared to be able to sit in judgment unaffected by her familial relationship and correctly apply the law. We find that although it may have made for a "cleaner" trial to have excused Honeycutt from the jury, the facts support the trial judge's decision. Accordingly, this issue lacks merit.

### VIII. THE ADMISSION OF TEN GRUESOME PHOTOGRAPHS OF THE DECEASED VIOLATED RULE 403 OF THE MISSISSIPPI RULES OF EVIDENCE AND THE STATE AND FEDERAL CONSTITUTIONS.

¶59. This is a straightforward issue. Query?: Were the nine photographs admitted into evidence more

prejudicial than probative? See M.R.E. 403. Doss asserts that the photographs were more prejudicial than probative in violation of M.R.E. 403, thus denying his right to a fair trial under the Fourteenth Amendment of the United States Constitution and Article 3, Section 14 of the Mississippi Constitution, in addition to being cumulative and duplicative. In response to the defense's objection to the admission of the photographs for the aforementioned reasons, the trial judge ruled by stating:

> The court has viewed the photographs prior to trial, and will admit them at this trial, finding that the probative value outweighs any prejudicial value. Let the record reflect that the same objection is noted for each of the numbers cited, and the same ruling is made.

¶60. The State asserted at trial, and now on appeal, that the admission of the photographs was necessary to illustrate the "position of the body, wounds and relation to other fixtures in the store where evidence was found." Naturally however, Doss contends that the photographs served no purpose other than to inflame and prejudice the jury because the State's expert witness in forensic pathology, Dr. Stephen Hayne, testified with separate transparencies to illustrate the location, entrance and exit of the nine bullets.

¶61. In support of his position, Doss points to *Sudduth v. State,* 562 So. 2d 67, 70 (Miss. 1990) wherein the court stated that "photographs of the victim should not ordinarily be admitted into evidence where the killing is not contradicted or denied, and the corpus delicti and the identity of the deceased have been established." However, the *Sudduth* Court concluded by stating that photographs of the victim are nevertheless admissible if more probative than prejudicial. *Id*.

¶62. Doss also complains that the admission of slides of the same photographs which were admitted was error, as the slides were cumulative and more prejudicial than probative. The State asserts that Doss's ability to object to the slides was waived, and is thus procedurally barred, as there was no contemporaneous objection at trial. The record supports the procedural bar regarding the admission of the slides, leaving only the 403 inquiry of the photographs.

¶63. This Court's standard of review regarding the admission of photographic evidence during trial is an abuse of discretion standard and the "discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and extenuation of probative value." *Hart v. State,* 637 So. 2d 1329, 1335 (Miss.1994) (*quoting Williams v. State*, 544 So. 2d 782, 785 (Miss. 1987); *See also, Jenkins v. State*, 607 So. 2d 1171, 1175 (Miss. 1992).

¶64. *Jenkins* involved the use of photographs and slides used to illustrate different wounds to the body which this Court permitted to be entered into evidence. *Westbrook v. State,* 658 So. 2d 847, 849 (Miss. 1995) held that the photographs in that case had evidentiary value because they aided in describing the circumstances of the murder and corpus delicti. Also, this Court has permitted photographs when offered for the purpose of describing the body or clarifying witness testimony. *Ashley v. State*, 423 So. 2d 1311, 1316 (Miss. 1982); *Hughes v. State,* 401 So. 2d 1100, 1106 (Miss. 1981).

¶65. Based upon the numerous cases in which the Court has permitted the introduction of photographs in conjunction with the abuse of discretion standard afforded a trial judge in Mississippi, and after reviewing the photographs, we find that the trial judge did not abuse his discretion in this case, rendering this issue without merit.

**IX. THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-1 AT THE GUILT PHASE WHICH CONSTRUCTIVELY AMENDED THE INDICTMENT BY FAILING TO REQUIRE THAT THE JURY FIND THAT THE KILLING BE DONE WITH MALICE AFORETHOUGHT WHERE THE INDICTMENT CHARGED KILLING WITH MALICE AFORETHOUGHT, VIOLATING THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.**

¶66. Doss asserts that the trial judge erred by allowing Instruction S-1 because it permitted the jury to convict Doss without requiring the State to prove malice aforethought, as charged in the indictment. The relevant court papers follow.

¶67. The January 1991 indictment charged:

That Frederick Bell and Anthony Doss, late of Grenada County, Mississippi, on or about May 6, 1991, in the county and State aforesaid and within the jurisdiction of this Court, did unlawfully, wilfully, feloniously and of their malice aforethought, then and there, kill and murder Robert C. Bell, a human being, when engaged in the commission of the crime of armed robbery, in violation of MCA §97-3-19(2)(e), as amended, against the peace and dignity of the State of Mississippi.

¶68. Instruction No. S-1 instructed the jury as follows:

The defendant, Anthony Doss, has been charged by indictment with the crime of capital murder. If you find from the evidence beyond a reasonable doubt in this case that

(1) On or about May 6, 1991, the defendant, Anthony Doss, did unlawfully, wilfully and feloniously kill Robert C. "Bert" Bell and

(2) said killing was done while the defendant, Anthony Doss, was engaged in the crime of armed robbery,

then you shall find the defendant guilty of capital murder.

If the State has failed to prove any one or more of the above elements beyond a reasonable doubt, then you shall find the defendant not guilty.

¶69. Doss contends that S-1 constructively and unconstitutionally amended the indictment because it broadened the elements of the offense, allowing Doss to be convicted on a ground not alleged by the grand jury, which violated Doss's rights under the Fifth, Sixth, and Fourteenth Amendments and Article 3, Sections 14 and 26 of the Mississippi Constitution and *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). He requests a reversal on this basis.

¶70. The State responds to this alleged error by asserting that the indictment was not amended to instruct the jury on malice. Rather, the State asserts that Doss was properly indicted under § 97-3-19(2)(e) and was properly instructed on the elements of capital murder under S-1 with adequate notice. The State also contends that Doss waived the ground for the alleged error here because he objected to S-1 at trial on the basis that "there's been no proof presented that the defendant, Anthony Doss, did any overt act to kill Robert C. Bell," which is a different ground than that used on appeal.

*Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993) (an objection on one or more specific grounds constitutes a waiver of all other grounds).

¶71. The record does reflect the ground argued by the State, which is inconsistent with the basis of Doss's appeal on this issue. Therefore, Doss is procedurally barred under *Conner*.

¶72. The State alleges another procedural bar on this issue pursuant to *Ross v. State*, 603 So. 2d 857, 860-61 (Miss 1992), for failure by Doss to challenge the indictment pre-trial, at trial, or in post-trial motions. This Court stated in *Ross* that Ross's failure to allege grounds at the trial level which were raised in his appeal did not warrant consideration by this Court. *Id*. Therefore, the State's alternative procedural bar has merit as well. Nevertheless, the State briefs the merits of the issue.

¶73. The State addresses the merits by citing *Griffin v. State*, 557 So. 2d 542, 549 (Miss. 1990). *Griffin* held that with regards to § 97-3-12(2)(e), that "[t]here is nothing about this statute which requires any intent to kill when a person is slain during the course of a robbery." *Id*. *Berry v. State*, 575 So. 2d 1, 13 (Miss. 1990), is offered by the State for the proposition that Doss's argument here is analogous to the one rejected by the Court in *Berry*. The *Berry* case involved a defendant indicted for an intentional murder, and yet the jury was not given an instruction on intent, which according to Berry, meant that the State had failed to prove the defendant guilty of the intentional offense for which he was indicted, requiring reversal of his conviction. *Id*. The Court held this issue to be procedurally barred, but addressed the substantive issue, finding that it lacked merit as well because it was sufficient to give the defendant fair notice of the crime charged. *Id.* By analogy, the State contends that the indictment in this case gave Doss adequate notice, rendering said issue without merit in addition to being procedurally barred, as was the issue in *Berry*. We agree. Accordingly, the Court finds Doss's argument twice procedurally barred and alternatively without merit.

## X. THE TRIAL COURT ERRED IN ALLOWING THE STATEMENT OF ANTHONY DOSS INTO EVIDENCE, IN VIOLATION OF THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

¶74. Doss contends that the trial court erred here by admitting into evidence his Statement made to Grenada County law enforcement officers while he was in the custody of the Memphis, Tennessee police for an unrelated murder charge. Said statement was the subject of a pre-trial suppression motion which was argued by both parties in chambers. During the suppression hearing, the trial court heard testimony from the interviewing officer, James "Buster" Grantham, Anthony Doss himself, and Bruce Patridge, the other interviewing officer.

¶75. The bottom line from the pre-trial hearing was that there were people on opposite sides of the table testifying to exactly opposite stories about the same event. Doss complained that the statement he gave was the result of being denied his request to have his attorney present, gas chamber threats, promises of leniency, and thus that his statement was not freely, voluntarily and knowingly made. In support of his position that the police had committed such acts before the "official" interview began, Doss points to the fact that the written statement notes that the interview began at 5:31p.m. and that the audio taped interview did not begin until 6:00 p.m.

¶76. The interviewing officers testified about the events of the interview and testified to the exact opposite of Doss. That is, they testified that Doss signed a waiver of rights form prior to being

questioned, that they did not make any threats or promises, and that he did not ask for his attorney. When asked what occurred during the first twenty-nine minutes, Officer Patridge and Officer Grantham did not recall the tape recorder being turned on and off, and just could not remember exactly what happened other than "about it being down here, and where it happened, and going to Memphis, and all this before the tape started."

¶77. After hearing all of the above-mentioned testimony, the trial court made the following pre-trial ruling:

> The Court having heard the evidence on the motion, which is a motion to suppress the statement, finds that the evidence, as it usually is on these motions, is directly in conflict between the officers who took it and the person who gave it. But, the Court, as the finder of fact on this motion, having heard the evidence on this case and the -- reviewing the same, and weighing the same, finds that the statement so given was given by the defendant Doss after he had been fully advised of his rights, as provided in the *Miranda* case; that the statement was knowingly given, and freely and voluntarily given without threat or reward, or promise of reward, and that the same is admissible. The motion to suppress is overruled.

¶78. Doss maintains that, based upon the totality of the circumstances test from *Miller v. State*, 243 So. 2d 558, 559 (Miss. 1971)[(23)], his statement was involuntary and thus inadmissible. The State asserts that Doss's statement was not a confession within the ordinary sense of the word because Doss originally denied shooting anyone, denied knowing that someone might get shot, and denied that he even had a gun. Doss subsequently admitted during trial that the latter fact was a lie. The State maintains that Doss has merely recited law and facts and has failed to present any argument about what induced him to make the statement.

¶79. This Court, in *Willie v. State*, 585 So. 2d 660, 668 (Miss. 1991), was confronted with almost the exact identical argument as Doss's which was rejected and *Miller* found to be inapplicable. Willie tried to use *Miller* in the same manner as Doss, but this Court found the argument unpersuasive because Willie actually denied the charges subsequent to the alleged inducement. *Id.* Doss's statement was a denial for the most part as well[(24)] because he alleged that he was merely present and that another person, whom Doss eventually admitted during the trial was not at all involved, was the trigger man in the robbery of Sparks. Therefore, Doss's use of *Miller* is inapplicable in light of *Willie*. As was stated in *Willie* and as appears to be the case here, the defendant's statement was "not overly influenced by the alleged promises of leniency or benefit." *Willie*, 585 So. 2d at 668.

¶80. As urged by the State in their brief, the *Willie* Court stated that:

> Once the evidence indisputably showed that the sheriffs told Willie that it would be best or better for him to tell the truth, the trial court should have determined whether these statements were mere exhortations to tell the truth or were inducements or implied promises of leniency.

*See Layne v. State*, 542 So. 2d 237, 240 (Miss. 1989); *Willie,* 585 So. 2d at 668.

¶81. The State contends that there was no indisputable fact that Doss ever received an inducement because there were consistent conflicting stories as to whether the statements were ever made. Therefore, according to the State, the trial court did not have to go the next step and determine if this

was or was not an inducement under *Willie* and *Layne*. Doss's argument is without merit as the trial court's pre-trial suppression ruling is supported in the record by substantial credible evidence in this case. Therefore, Doss's request for reversal on this basis is denied as there was no abuse of discretion by the trial court.

### XI. THE TRIAL COURT ERRED IN NOT REDACTING FROM THE TRANSCRIPT OF THE TAPED CONFESSION THE PORTION DEALING WITH OTHER CRIMES OF ANTHONY DOSS, IN VIOLATION OF DOSS'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.

¶82. According to Doss, the issue here is that the trial court erred during the trial by admitting into evidence his antecedent police station statement, and in admitting State's exhibit 61A into evidence because they both contained a question and an answer about another murder in Memphis in which Doss was suspected of having been involved. In other words, Doss asserts that the transcript and exhibit should have been edited to exclude such information of his involvement in another crime.

¶83. Failure to do so allegedly violated Doss's rights to a fair trial as guaranteed by Mississippi law, Article Three, Section 14, of the Mississippi Constitution and the Fourteenth Amendment to the United States Constitution because of the prejudicial effect of admitting into evidence a reference to another crime. Doss offers the following authorities: *Davis v. State*, 431 So. 2d 468, 470-471 (Miss. 1983) ("As a general rule, testimony in a criminal trial should be confined to the charge for which an accused is on trial and the prosecution should not be allowed to aid the proof against the accused by showing he committed other offenses . . . [However] . . . There are certain recognized exceptions to the rule."[(25)] Citations omitted. *Accord, Gray v. State*, 351 So. 2d 1342 (Miss. 1977) and *Anderson v. State*, 171 Miss. 41, 47, 156 So. 645, 646 (1934).

¶84. The Q&A complained as follows:

> Q: (BUSTER GRANTHAM) That gun that they used to shoot this guy up here in Memphis [sic] that the same gun that come [sic] out of the store [Sparks]?
>
> A: (ANTHONY DOSS) I couldn't be for sure, but its similar to it.
>
> Q: (BUSTER GRANTHAM) Do you believe it's the same gun? Did ya'll get anymore guns after ya'll left the store [Sparks]?
>
> A: (ANTHONY DOSS) No, sir.

¶85. The State asserts a procedural bar under *Conner v. State*, 632 So. 2d 1239, 1255 (Miss. 1993) against Doss on this issue. The State concedes that Doss objected during trial to the admission of the aforementioned information, but points to the fact that the basis for the objection was the same as was used during the suppression hearing; i.e., voluntariness, not lack of redacting. The record supports the State's contention here.

¶86. The State also asserts an additional procedural bar pursuant to *Berry v. State*, 575 So. 2d 1, 9 (Miss. 1990), for lack of a contemporaneous objection, and thereby failing to present to the trial court the need for redaction of the statement. As asserted by the State, "[a] trial judge cannot be put in error on a matter which was not presented to him for decision." *Holland v. State*, 587 So. 2d 848,

868 n.18 *quoting **Ponder v. State***, 335 So. 2d 885, 886 (Miss. 1976) (citations omitted). Accordingly, the State asserts that this alleged error lacks merit for this additional reason as well.

¶87. We find that the issue is twice procedurally barred. The basis of the overruled objection during the pre-trial suppression hearing and the basis of the trial objection was voluntariness, not a request for redacting due to the possible implication of Doss in another crime. Doss's argument is also barred because the trial judge was not presented with a request to redact the statement during the post-trial motions. This alleged error is barred.

## SENTENCING PHASE ISSUES

### XII. THE TRIAL COURT VIOLATED THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW IN SUBMITTING THE "AVOIDING ARREST" AGGRAVATING CIRCUMSTANCE TO THE JURY.[26]

¶88. Doss argues (1) that the evidence did not support the giving of sentencing instruction No. C-1 setting forth the aggravating circumstance that the murder was committed for the purpose of avoiding arrest and (2) that no accompanying limiting instruction was given.

¶89. The State asserts that this Court, in ***Chase v. State***, 645 So. 2d 829, 858 (Miss. 1994), held that a limiting instruction on this type of aggravator is not necessary. ***Chase*** clearly does dispose of this portion of Doss's argument, rendering it without merit. ***See Evans v. Thigpen***, 631 F.Supp. 274, 283 (S.D.Miss.1986), *aff'd* 809 F.2d 239 (5th Cir.1987); ***Gray v. Lucas***, 677 F.2d 1086, 1109-1110 (5th Cir. 1982).

¶90. The State next asserts that the evidence supported the instruction. It points to the following facts. (1) Doss admittedly went into the store with a gun to rob it. (2) Freddie had said before entering the store that they were "going to go in shooting." (3) Doss supposedly said "Let's go. Let's go do it" immediately before entering Sparks. (4) Bell hollered as he was shot and had several shots through his hands indicating that he was neither armed nor posed a threat to the robbers' escape. (5) According to Coffey, once Doss was on his way to Memphis, Doss was ready to go back and kill James to eliminate a possible witness. And finally, (6) Doss admitted that he went to Memphis so that he would not get caught.[27]

¶91. Doss responds in his reply brief with the argument that all of the above-mentioned facts exist in any felony-murder case and that there are no "substantial reasons" to support the aggravating circumstance in this case. We find Doss's argument unpersuasive as the aforementioned facts, particularly #4 and #6, support the giving of the instruction. This argument is without merit.

### XIII. THE TRIAL COURT ERRED IN SUBMITTING TO THE JURY THE ROBBERY-MURDER AGGRAVATING CIRCUMSTANCE IN VIOLATION OF THE UNITED STATES CONSTITUTION AND STATE LAW.

¶92. Doss argues under this assignment of error that the Mississippi capital murder statute is defective in that it does not genuinely narrow the class of defendants and is, therefore, constitutionally infirm. Doss additionally argues that the robbery aggravating factor duplicates the element of capital murder and is, therefore, constitutionally infirm on this basis as well. The State

addresses the merits of the first ground, but asserts that the duplicative ground is procedurally barred. Doss objected to the second aggravator[28] of C-1 on the basis that it was unconstitutionally vague and lacked reliability.

¶93. The State contends that the use of the robbery aggravator is not constitutionally infirm as it does genuinely narrow the class of defendants, and cites *Minnick v. State*, 551 So. 2d 77, 96-97 (Miss. 1988), *reversed on other grounds*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) interpreting *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 555, 98 L.Ed.2d 568, 583 (1988). The *Minnick* Court found that *Lowenfield* "held that the fact that the sole aggravating circumstance found by the jury in its penalty decision was identical to an element of the underlying offense did not violate the Eighth Amendment." *Id.* Notably, the jury in this case unanimously found other aggravating factors in addition to the robbery aggravating factor.

¶94. Doss relies primarily upon *Arave v. Creech*, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188, 200 (1993), for the proposition that the Mississippi statute permitting the use of robbery as a mitigating circumstance is over broad and does not genuinely narrow the class of persons on whom the death penalty is imposed. *Arave* noted that, "[i]f the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm." *Id*. Therefore, Doss asserts that the robbery aggravating circumstance does not "genuinely narrow" because robbery-murder standing alone, is not a crime for which the death penalty is proportionate punishment, and so it thereby violates the Eight Amendment and Article 3, Section 28 of the Mississippi Constitution.

¶95. Doss's argument under this alleged error has been held without merit in several cases. *Ladner v. State*, 584 So. 2d 743, 762 (Miss. 1991)[29]; *Minnick v. State*, 551 So. 2d 77, 96-97 (Miss. 1989), *reversed on other grounds*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *Pinkney v. State*, 538 So. 2d 329, 358-59 (Miss. 1988), *vacated on other grounds*, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990); *Jones v. State*, 517 So. 2d 1295, 1300 (Miss. 1987), *vacated on other grounds*.[30] *Ladner* explicitly rejected this stacking argument by once again referring to *Lowenfield* wherein the United States Supreme Court found that it was permissible. 108 S.Ct. at 552-55, 98 L.Ed.2d at 579-83. Accordingly, the trial court will not be held in error on this issue.

### XIV. THE TRIAL COURT ERRED IN SUBMITTING TO THE JURY THE AGGRAVATING CIRCUMSTANCE THAT DOSS HAD BEEN CONVICTED OF ANOTHER CAPITAL OFFENSE, IN VIOLATION OF DOSS'S RIGHTS UNDER THE UNITED STATES CONSTITUTION AND MISSISSIPPI LAW.

¶96. Doss again attacks the use of an aggravating circumstance which the jury unanimously found to exist beyond a reasonable doubt. The meat of Doss's argument here is that the jury was improperly instructed on the aggravating circumstance that he had "previously been convicted of another capital offense or of a felony involving the use or threat of violence to the person." Doss points to State's Exhibit S-1 which discloses that Doss previously pled guilty to second degree murder in Tennessee. Therefore, because Doss pled guilty to a non-capital crime and was not convicted of a capital crime, [31] the jury was improperly instructed. Doss, citing *Wilcher v. State*, 635 So. 2d 789, 790-791 (Miss. 1993), additionally argues that the error cannot be held harmless because the jury found this to be an aggravating circumstance. ("Miss. Code Ann. § 99-19-101 (Supp.1993) prevents this Court

from performing either reweighing or harmless error analysis as a matter of State law.")[32]

¶97. The State points to the use of **or** in instruction C-1, and the fact that Doss objected at trial to the instruction on the basis of double jeopardy, not because the instruction was not supported by the evidence. Therefore, the State asserts a procedural bar pursuant to *Chase v. State*, 645 So. 2d at 859.[33] Without waiving the procedural bar, the State addresses the merits of the aggravator's language although the record supports the bar.

¶98. The State argues that the aggravator's language should be read as a whole and not as a series of disjunctive phrases. *Shell v. State*, 554 So. 2d 887, 906 (Miss. 1989), *reversed on other grounds*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), is offered as its authority. Specifically, the State brings attention to the following language from *Shell*.

> Only one crime -- the murder of Mrs. Johnson while in the commission of a robbery -- was considered by the jury. The list of aggravating circumstances applies only to this one crime. The issue for the jury to determine was whether the aggravating circumstances as a whole applied to the murder of Mrs. Johnson, a question answered in the affirmative.

*Id.* [34]

¶99. Therefore, the State asserts that this assignment of error is without merit because the aggravator's language is to be looked at as a whole. The State also brings to the Court's attention the fact that Doss does not and cannot argue that second-degree murder is not a violent crime against a person because it is naturally inherently violent. Finally, the State points out that Doss did not object to the introduction of the conviction at the sentence phase, and that it was not referred to as a capital conviction when introduced into evidence.

¶100. This issue is procedurally barred and without merit because of *Chase* and *Shell* respectively.

> ### XV. IN NOT FULLY INFORMING THE JURY OF DOSS'S SENTENCE OF IMPRISONMENT IMPOSED BY THE State OF TENNESSEE AND THE RAMIFICATIONS OF A LIFE SENTENCE IN THIS CASE, THE TRIAL COURT VIOLATED DOSS'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTIONS AND MISSISSIPPI LAW.

¶101. Doss asserts that the trial court erred because it did not inform the jury, when requested, if they could sentence Doss to life without parole.[35] Twenty minutes later the jury returned the death sentence. Doss contends that such a request indicated the jury's desire to give a sentence less than death. Furthermore, according to Doss, had the jury been informed of the effect of his twenty-five-year sentence in Tennessee for second-degree murder on his eligibility for parole, then the jury could have decided a sentence other than death.[36]

¶102. In support of his position, Doss cites *Turner v. State*, 573 So. 2d 657, 674 (Miss. 1990) for the proposition that a jury is always entitled to have before it "all possible relevant information about the individual whose fate it must determine." *See Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929, 941 (1976). The State asserts that *Turner* is inapplicable because *Turner* dealt with an habitual offender being sentenced, not a defendant who is indicted and tried as a non-

habitual. Doss additionally cites *Mackbee v. State*, 575 So. 2d at 39-41 for the proposition that Doss's jury was impermissibly denied relevant information during the sentencing phase. *Mackbee* was also an habitual offender case decided just seven days after *Turner*.

¶103. In lieu of *Turner*, the State submits that *Williams v. State*, 445 So. 2d 798, 813 (Miss. 1984) is the applicable rule for non-habitual offenders. *Williams* noted that references to probation during a sentencing phase of a capital murder trial are inappropriate because it would cause the jury to second guess the legislature and because parole is not automatic. *Id*. Accordingly, the State asserts that *Turner* should not be extended to involve non-habitual offenders. We agree and so hold.

¶104. In explaining the *Turner* decision, the *Mackbee* Court commented that the reason for the general rule prohibiting the introduction of information about parole is that it "necessarily invites a high degree of speculation and conjecture." *Mackbee*, 575 So. 2d at 40. As the *Mackbee* Court noted, "We have recognized repeatedly the speculative nature of parole in other contexts." *Mackbee*, 575 So. 2d at 40. However, "[t]here is one notably and empirically demonstrable exception to this premise. Persons sentenced as habitual offenders under Miss. Code Ann. § 99-19-83 (Supp.1990) are not eligible for parole. The point has been routinely observed in our reports. . . ."(citations omitted). *Mackbee*, 575 So. 2d at 40-41. Such information was not proscribed in *Turner* and *Mackbee* because there were habitual offenders involved. Therefore, the Court clearly states today that our jurisprudential history which generally denies the introduction of information into a criminal trial about parole when a non-habitual is involved, shall remain undisturbed when defendants are not indicted and tried as habitual offenders. Accordingly, this issue is without merit in light of *Mackbee* because Doss was not indicted and tried as an habitual offender.

### XVI. THE TRIAL COURT'S ANTI-SYMPATHY INSTRUCTION COUPLED WITH DENIAL OF A MERCY INSTRUCTION VIOLATED THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

¶105. Doss alleges error by the trial court for failing to give instructions D-59, and instruction D-S-24. They are as follows:

**D-59**

The Court instructs the jury that although at the guilt and innocence phase of the trial, you were instructed that you were not to be swayed by sympathy, at this phase of the trial you are bound by law and your oath as jurors to consider mitigating factors. Mitigating factors are facts that, while they do not justify or excuse the crime, nevertheless in fairness and sympathy and mercy to Anthony Doss, must be considered by you as extenuating or reducing the degree of his blame or punishment. You may not, however, be swayed by prejudice or public opinion.

**D-S-24**

. . . . .

You may find that a sentence of death is inappropriate even if there is only a single mitigating circumstance and multiple aggravating circumstances. You may also find that death is not warranted even though there are one or more aggravating circumstances and not a single

mitigating circumstance. You are not required to find any mitigating circumstance in order to return a sentence of life imprisonment. Nor does the finding of an aggravating circumstance require that you return a sentence of death. You as a juror always have the option to sentence the defendant to life imprisonment, whatever findings you make.

¶106. Doss contends that the denial of these instructions denied him due process under *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). Doss further asserts that the refusal of said instructions violated the Eighth and Fourteenth Amendments to the United States Constitution and Article 3, Section 14 and 28, of the Mississippi Constitution. The State disagrees.

¶107. The State asserts yet another procedural bar against Doss for failing to object as required by *Willie v. State,* 585 So. 2d 660, 677 (Miss. 1991); *See Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987); *Shelton v. State*, 445 So. 2d 844, 846 (Miss. 1984). Furthermore, the State argues that these instructions are mercy instructions to which this Court has repeatedly held that a defendant is not entitled. This Court has explicitly held that a "defendant has no right to a mercy instruction." *Ladner v. State*, 584 So. 2d 743, 761 (Miss. 1991) (citations omitted); *See also Foster v. State*, 639 So. 2d 1263, 1300-01 (Miss. 1994).

¶108. The first instruction is clearly a mercy instruction. The Court has clearly held that a defendant is not entitled to such. *Ladner v. State*, 584 So. 2d 743, 761 (Miss. 1991) (citations omitted). Accordingly, the first instruction under this issue is without merit in addition to being procedurally barred.

¶109. The second instruction is not a mercy instruction explicitly, but has an effect of mercy. However, the second instruction is not much different than the weighing language from other instructions such as C-1 which was given. Accordingly, the denial of this instruction under this issue is without merit as well in addition to being procedurally barred.

> **XVII. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S INSTRUCTION D-S4 TELLING THE JURORS THAT THEY NEED NOT BE UNANIMOUS IN FINDING MITIGATING CIRCUMSTANCES AND ALSO IN IMPROPERLY INSTRUCTING THEM THAT THEY HAD TO BE UNANIMOUS BEFORE THEY COULD FIND A MITIGATING CIRCUMSTANCE.**

¶110. The focus of Doss's argument here is that because the jury was not explicitly instructed that they did not have to be unanimous regarding mitigating factors, and because the jury was instructed that they had to be unanimous in (1) finding aggravating circumstances and (2) to return a verdict and (3) to impose a sentence of death, that the trial court erred in denying instruction D-S-4 which said mitigating factors did not have to also be found unanimously.

¶111. The State asserts a procedural bar here which is supported by the record. Additionally, the State points out that the Court in *Shell v. State*, 554 So. 2d 887, 905 (Miss. 1989), *reversed on other grounds*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), rejected a similar argument. The *Shell* Court held an identical claim without merit despite the fact that unanimous did appear in the aggravating portions of the instructions. *Shell v. State*, 554 So. 2d at 905. The *Shell* Court reasoned that although the instructions instructed the jury to find aggravating circumstances unanimously, such language did not restrict the jury's ability to consider the appropriateness of the death penalty. *Id.*

Accordingly, this issue is without merit in addition to being procedurally barred.

### XVIII. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY AT THE SENTENCING THAT IT COULD CONSIDER "THE DETAILED CIRCUMSTANCES OF THE OFFENSE."

¶112. The portion of Instruction C-1 which Doss contends erroneously allowed the jury to consider the 'detailed circumstances of the offense' is as follows:

**C-1.**

You have found the defendant, Anthony Doss, guilty of the crime of capital murder. You must now decide whether the defendant will be sentenced to death or life imprisonment for the capital murder of Robert C. "Bert" Bell. In reaching your decision, you may objectively consider the detailed circumstances of the offense for which the defendant was convicted, and the character and record of the defendant himself. You should consider and weigh any aggravating and mitigating circumstances, as set forth later in this instruction, but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling.

¶113. To allow the jury to be instructed to consider evidence other than that related to aggravating and mitigating circumstances purportedly violates Mississippi case precedent and statutory law. *Stringer v. State*, 500 So. 2d 928, 941 (Miss. 1986)[(37)]; Miss. Code Ann. § 99-19-101 (Supp. 1994).

¶114. The State asserts another procedural bar against Doss on this issue which is again supported by the record. Nevertheless, the State addresses the merits and offers the rationale of *Tuilaepa v. California*, 114 S.Ct. 2630, 129 L.Ed.2d 750, 762, 62 USLW 4720 (1994) for adoption by the Court on this issue. The United States Supreme Court Stated:

. . . . [T]he sentencer should consider the circumstances of the crime in deciding whether to impose the death penalty. *See, e.g.*, *Woodson [v. North Carolina*, 428 U.S. 280,] 304, 49 L.Ed.2d 944 (1976) ("consideration of. . . . the circumstances of the particular offense [is] a constitutionally indispensable part of the process of inflicting the penalty of death"). We would be hard pressed to invalidate a jury instruction that implements what we have said the law requires.

*Tuilaepa*, 129 L.Ed.2d at 762.

¶115. Traditionally, the Court has limited evidence during the sentencing phase to relevant evidence necessary to demonstrate one of the aggravating or mitigating circumstances. *Coleman v. State*, 378 So. 2d 640, 648 (Miss. 1979). Nevertheless, Miss. Code Ann. §99-19-101(1) instructs the trial court to allow the presentation of "any matter that the court deems relevant to the sentence, and shall include matters relating to any of the aggravating or mitigating circumstances." To say that a jury could not also consider the detailed circumstances of the offense would defy logic and reason as well as the explicit language of §99-19-101(1). Accordingly, the Court finds this issue is without merit and against *Tuilaepa*.

### XIX. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT IN ORDER

**TO RETURN A SENTENCE OF LIFE IMPRISONMENT IT HAD TO FIND THAT THE MITIGATING FACTORS OUTWEIGH THE AGGRAVATING CIRCUMSTANCES**.

¶116. Doss contends that the trial court erred in submitting the following language to the jury in instruction C-1.

> To return a death penalty you must find that the mitigating circumstances -- those which tend to warrant the less severe penalty of life imprisonment -- do not outweigh the aggravating circumstances -- those which tend to warrant the death penalty.
>
> . . . .
>
> If one or more of the above aggravating circumstances is found to exist, then you must consider whether there are mitigating circumstances which outweigh the aggravating circumstance(s).
>
> . . . .
>
> If you find the evidence that one or more of the preceding elements of mitigation exist, then you must consider whether it (or they) outweigh(s) or overcome(s) the aggravating circumstance(s) you previously found. In the event that you find that the mitigating circumstance(s) do not outweigh or overcome the aggravating circumstance(s), you may impose the death sentence. Should you find that the mitigating circumstance(s) outweigh(s) or overcome(s) the aggravating circumstance(s) you shall not impose the death sentence.

¶117. Doss alleges that the above instructions are improper because they state that the jury must find that the mitigating circumstances outweigh the aggravating circumstances in order to not impose the death penalty. The State argues yet another procedural bar which is supported by the record. *Foster, supra; Chase, supra; Cole, supra*. Without waiving the procedural bar, the State offers *Conner v. State,* 632 So. 2d 1239, 1278 (Miss. 1993) for the proposition that the Court has settled and rejected this very argument.

¶118. In *Conner*, it was "argued that a proper instruction would permit imposition of the death penalty only where the jury finds that aggravating circumstances outweigh mitigating circumstances, not vice versa." *Id.* The *Conner* Court held that:

> This argument was thoroughly weighed and found wanting in *Shell v. State*, 554 So. 2d 887, 904 (Miss. 1989),*reversed on other grounds*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990); *See also Jordan v. State*, 365 So. 2d 1198, 1206 (Miss. 1978), *cert. denied*, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979)[(38)]; *Gray v. Lucas*, 677 F.2d 1086, 1105-06 (Miss. 1986).

*Conner*, 632 So. 2d at 1278.

¶119. Accordingly, Doss's argument is without merit in addition to being procedurally barred.

> **XX. THE TRIAL COURT ERRED IN SUBMITTING TO THE JURY IN THE SENTENCING PHASE OF THE TRIAL THE FORM OF THE VERDICT AS CONTAINED IN SENTENCING INSTRUCTION C-1.**

¶120. Doss complains that the trial court erred by submitting sentencing instruction C-1 and denying instruction D-S-3[(39)] because of this Court's language from ***Jenkins v. State***, 607 So. 2d 1171, 1180 (Miss. 1992). The ***Jenkins*** court reversed that case on other grounds, but noted that instruction C-1-S-A in that case should have been revised to more clearly instruct the jury. *Id*. The problem with the sentencing phase instruction was that it had the different verdict options on different pages which did not all contain a space for the jury foreman's signature. *Id.* Such is not the case here.

¶121. In this case, instruction C-1 is made up of six pages. The sentencing form is two pages. Instruction C-1 has all three sentencing options on one page. The jury appears to have been clearly instructed and understanding of their instructions as page one of the sentencing form is filled out perfectly as instructed by C-1. Page two reflects that the jury circled the plural option regarding the balancing of mitigating and aggravating circumstances to reflect that the aggravators outweighed the mitigators. Therefore, the jury correctly, and without any apparent confusion, completed the form used in this case.

¶122. The State asserts that Doss is once again procedurally barred, which is supported by the record. Additionally, the State asserts that ***Jenkins*** is inapplicable and that the jury was adequately and clearly informed. ***Jenkins*** is inapplicable under this Court's understanding as well. Accordingly, this issue is without merit and procedurally barred.

### XXI. THE FINDINGS BY THE JURY AT THE SENTENCING PHASE WERE TOO UNCERTAIN AND UNRELIABLE TO SUPPORT THE SENTENCE OF DEATH, VIOLATING DOSS'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

¶123. This assignment of error is similar to Issue II, *supra*. Doss contends that erroneous instructions on accomplice liability which allegedly omitted the requirement of proof of intent make the jury's two findings of fact to impose the death penalty an uncertain and unreliable basis to support the death penalty. In other words, the allegedly "erroneous" guilt phase instructions so confused the jury from having to find "individualized consideration"[(40)]of Doss's culpability that one cannot be certain that the jury understood the ***Enmund*** findings required at the sentencing phase. The allegedly erroneous instructions were S-3 and S-4 which are presented in full under Issue II.

¶124. The State asserts another procedural bar pursuant to ***Foster, Chase, Cole***, and ***Conner, supra.*** Doss alleges that he objected to the second aggravator in C-1, but the record discloses otherwise. The following is the objection made by Doss to C-1:

> BY MR. BAILEY: I object to C-1 because the jury may not be instructed to disregard sympathy in the sentencing, citing ***Pinkney v. State***. We object to sentencing instruction, C-1, page 2 of the instruction for 2 reasons: 1, there was a failure to prove each aggravating circumstance beyond a reasonable doubt, and 2, we object to the constitutionality of the aggravating circumstances as to vagueness and its reliability. And then, more specifically, the first aggravating circumstance that he's been convicted of another capital offense, we object, stating that double jeopardy clause bars subsequent prosecution, if to establish an essential element of the offense charges in the prosecution, the State can prove the conduct that constituted an offense for which the defendant has already been prosecuted. As to number 3, avoiding or preventing a lawful arrest, we object, stating that this circumstance was not clearly

supported by the evidence, and you must have a separate limiting instruction. Okay.

BY THE COURT: No. C-1 is GIVEN.[(41)]

¶125. The record reflects that the jury found two *Enmund* factors of specific intent. Doss relies upon *Abram v. State*, 606 So. 2d 1015, 1042 (Miss. 1992), for the proposition that a death sentence requires more than accomplice liability.[(42)] *Abram* discussed at length the differences between §99-19-107(c), intending that a killing take place, and §99-19-107(d), contemplating that lethal force would be employed. Abram was only found to have contemplated that lethal force would be used, which this Court held was sufficient to meet the *Enmund* culpability requirement. *Abram v. State*, 606 So. 2d 1015, 1042-3 (Miss. 1992). The jury found that Doss was guilty of §99-19-107(c), intending that a killing take place, and §99-19-107(d), contemplating that lethal force would be employed. Therefore, the *Enmund* test was met and Doss's reliance upon *Abram* is misplaced and without merit. The record reflects that there was a reliable verdict and sentence in addition to there being a procedural bar.

### XXII. THE IMPROPER CLOSING ARGUMENT BY THE PROSECUTOR VIOLATED ANTHONY DOSS'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS AND MISSISSIPPI LAW.

¶126. Doss complains that the prosecutor improperly argued against the consideration of mitigating evidence, discussed the victim, argued the defendant's lack of remorse, invoked the authority of the Bible, interjected his personal opinion, and argued non-statutory aggravating factors and facts not in evidence. Said violations allegedly deprived Doss of his rights under the Eighth and Fourteenth Amendments of the United States Constitution and Article 3, Sections 14 and 28 of the Mississippi Constitution. The following are the portions of the closing argument alleged to have been improper and constituting reversible error.[(43)]

E.g., of misstatements.[(44)]

We've got a case where no care was placed on human life. Now, if -- even if we hadn't had the second murder that day, I think it still would have been a case that justified the death penalty. . . .

Now, this is a case where two lives were taken. Opposing counsel says there is something good in this person right here. Well, what are we going to do? Are we going to balance? Does it take two lives, does it take twenty lives? How many lives does he have to take before justice is done?

. . . .

E.g., of arguing against the consideration of mitigating evidence.[(45)]

The mitigating circumstances, such as the age of the defendant at the time of the crime, loving and caring child to his mother, grew up in a poverty environment -- there's a list of them here for you to look at. How can those have any bearing on a person taking somebody else's life? I submit to you that there's not one mitigating circumstance on here that has anything to do with a murder case; that has anything to do with why you shouldn't follow the law and give this

death penalty on this particular case. Now, there are a lot of people that grow up in poverty. But, that doesn't give them the right to go out and kill somebody. There are a lot of people that grow up with one parent. That doesn't give them the right to go out and murder somebody. And that 's what their [sic] asking you to do, is consider these two factors and try to say they outweigh the fact that two people were killed that day; they outweigh the fact that the capital murder of Robert C. "Bert" Bell was committed during the commission of a robbery; they outweigh the fact that the capital murder was committed to keep them from being caught. They can't even come close.

. . . .

E.g., of arguing about defendant's lack of remorse.

Now, if -- even if we hadn't had the second murder that day, I think it still would be a case that justified the death penalty without any question, but that even more so shows that there was no remorse, no feeling of guilt or sorrow for taking a human life.

. . . .

E.g., of Doss's propensity for future danger.

The death penalty is there for a reason. It's for people like this that don't need to be out in our society, because they're a danger to all of us. Somebody who doesn't care who they kill. Now this just happened -- somebody, I think the defense attorney mentioned this, about somebody being at the wrong place at the wrong time? This could have been anywhere, anybody. This could have been anybody working in a store or any business, because they just decided they wanted to go in and rob and kill. It didn't matter to them who was killed. They didn't even know Bert Bell. They didn't care . . . We cannot have people walking the streets that have no more regard for human life than that.

. . . .

E.g., of arguing facts not in evidence.[(46)]

The plan to start with was, "We're going to go in, we're going to take what we want, and we're going to kill Bert Bell.", just like they killed the person in Memphis . . . It didn't matter to them who was killed. They didn't even know Bert Bell. They didn't care.

. . . .

E.g., of prosecutor's inappropriate use of the Bible.[(47)]

[The defense] wants to argue that the Bible says you shouldn't give death. That's not what the Bible says. To start with, God decreed capital punishment as the penalty for murder when he said in Genesis 9:6, "Whosoever sheddeth man's blood, by man shall his blood be shed. For in His image, in the image of God, made He man.". . . . So, don't be held back by the death penalty. All through it, the Bible justifies the death penalty.

E.g., of prosecutor stating personal opinion.

That's why I think this is definitely the case where we should ask for the death penalty, and you should give the death penalty. . . . And that's another reason that I think the death penalty is the only appropriate penalty in this case.

¶127. The State correctly asserts a procedural bar to this issue on all counts because the record reflects that there was not one objection by Doss during the entire closing argument. Without waiving the procedural bar, the State offers *Berry v. State*, 575 So. 2d 1, 9 (Miss. 1990), for its authority that the State's comments did not exceed the limits of permissible argument. We agree on both points and find this issue without merit in addition to clearly being procedurally barred.

### XXIII. THE DEATH PENALTY IS DISPROPORTIONATE PUNISHMENT HERE GIVEN THE CIRCUMSTANCES OF THE CRIME.

¶128. Doss primarily draws the Court's attention to two cases in support of his proportionality argument. He contends that given the failure of the jury to find that Doss killed or attempted to kill Bert Bell, that the sentence of death is excessive. The cases relied upon for his issue here are *Bullock v. State*, 391 So. 2d 601 (Miss. 1980) and *Reddix v. State*, 381 So. 2d 999 (Miss. 1980)[(48)]. *Bullock* and *Reddix* are offered for the proposition that a death sentence is disproportionate against a non-trigger defendant involved in a capital murder case.[(49)]

¶129. The State contends that Doss's reliance upon *Bullock* and *Reddix* is misplaced because the language relied upon did not garner a majority of votes. The original opinion from *Bullock* is offered against Doss for what *Bullock* really stands for.

> In the case at bar [*Bullock*], there is no record of the aggravating circumstances and mitigating circumstances in the trial of Tucker, and it is not possible to determine what circumstances influenced the jury in its life verdict. The law is well settled in this State that any person who is present, aiding and abetting another in the commission of a crime, is equally guilty with the principal offender. *Jones [James] v. State*, 307 So. 2d 549 (Miss. 1975); *Bass v. State*, 231 So. 2d 495 (Miss. 1970); *McBroom v. State*, 217 Miss. 338, 64 So. 2d 144 (1953).

*Bullock*, 391 So. 2d at 614.

¶130. In light of the restatement in *Bullock* about accomplice liability, coupled with the fact that Doss's jury found two of the four required statutory findings for a death sentence under § 99-19-101(7) and *Enmund*, the State submits that Doss correctly received the death sentence as supported by case precedent and the jury's findings. We agree that the sentence is not disproportionate to Doss's involvement in the crime in this case. Accordingly, this issue is without merit. *See Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

### XXIV. THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.

¶131. Finally, Doss argues that because of the cumulative effect of the errors by the State and trial judge, that his conviction and sentence should be reversed. *See, e.g.*, *Jenkins v. State*, 607 So. 2d 1171, 1183-84 (Miss. 1992); *Hansen v. State*, 592 So. 2d 114, 153 (Miss. 1991). The State asserts that there are no near errors, much less actual errors and that even if the Court were to find near

errors, that such would not result in a denial to Doss of a fair trial when looked at on the whole under *Williams v. State*, 445 So. 2d 798, 814 (Miss. 1984).

¶132. Doss argues that the cumulative effect of these alleged errors deprived him of a fair trial and therefore his conviction should be reversed and his death sentence should be vacated. Most of Doss's assigned errors are subject to a procedural bar as well as alternatively being without merit. These assignments of error, taken alone or cumulatively, do not warrant a reversal of Doss's conviction and death sentence. "Where there is no reversible error in any part, . . . . there is no reversible error to the whole." *McFee v. State*, 511 So. 2d 130, 136 (Miss. 1987). This Court has held that a murder conviction or a death sentence can still not warrant a reversal where the cumulative effect of alleged errors, if any, was procedurally barred. *Davis v. State,* 660 So.2d 1228, 1256 (Miss. 1995). Therefore, this assignment of error is without merit.

### CONCLUSION

¶133. Mississippi Code Ann. Section 99-19-105(3) (Supp. 1985) requires this Court to conduct certain specific inquiries in addition to the assignment of errors by the appellant. As § 99-19-105(3) states, we are required to determine:

> (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;

> (b) Whether the evidence supports the jury's or judge's findings of a statutory aggravating circumstance as enumerated in Section 99-19-101; and

> (c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

¶134. Ever since *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976), this Court has upheld the imposition of the death penalty in the cases listed in the appendix. After carefully reviewing other similar cases listed in the appendix and comparing them with Doss's case, we find that the conviction and sentence are appropriate. Furthermore, in specifically fulfilling this Court's statutory requirements of § 99-19-105(3), we find that the sentence of death in this case was not imposed under the influence of passion, prejudice or any other arbitrary factor; that the evidence supports the jury's and judge's findings of the statutory aggravating circumstances as enumerated in Section 99-19-101; and finally, after considering the crime and Doss particularly, that the sentence of death is not excessive or disproportionate to other cases in which the same sentence has been imposed.

¶135. Doss has failed to present any plain errors, or cumulative near errors to disturb his conviction and sentence. Doss's conviction and sentence were properly decided by the jury. Additionally, the § 99-19-105(3) inquiry appears to fail to illuminate any error either. Accordingly, based upon the previous analysis, we affirm both the conviction and the sentence.

¶136. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-105 (7) (1972) AND M.R.A.P. 41(a)**
.

**LEE, C.J., PITTMAN, SMITH AND MILLS, JJ., CONCUR. PRATHER, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**PRATHER, PRESIDING JUSTICE, DISSENTING:**

¶137. Anthony Doss assigns as error that the death penalty is disproportionate punishment in this case given the circumstances of this crime. There were two co-defendants in this crime, Freddie Bell and Anthony Doss, who were indicted and tried separately for capital murder. At sentencing, the jury was instructed to consider the four *Enmund* factors, which were codified in Miss. Code Ann. § 99-19-101 (7)(a-d) (Supp. 1994), to determine on the facts of this case whether Doss actually killed, attempted to kill, intended that a killing take place, and/or contemplated the use of lethal force. The sentencing jury only found that Anthony Doss intended to kill and contemplated the use of lethal force. The jury did not find that he killed or that he attempted to kill the store clerk; on this basis, Doss contends that the death penalty is excessive and disproportionate.

¶138. In *Enmund v. Florida*, 458 US 782, 797 (1982), the United States Supreme Court ruled that the Eighth Amendment to the United States Constitution forbids the imposition of the death penalty on a person who aids and abets a felony in the course of which a murder is committed by others, but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. Additionally, this Court is statutorily required to determine "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant." Miss. Code Ann. § 99-19-105 (3)(c) (Supp. 1994). This charge has been interpreted to mean that this Court must determine whether the sentence imposed here is excessive or disproportionate to the penalty imposed in similar cases since *Jackson v. State*, 337 So. 2d 1242 (Miss. 1976). *Blue v. State*, No. 93-DP-00534-SCT, slip op. at 54 (Miss. Feb. 15, 1996).

¶139. Doss argues to this Court that there is a compounding of error in this trial which requires that the death penalty be vacated and a life imprisonment sentence be ordered. Doss contends that the trial court granted an allegedly erroneous instruction on accomplice liability at the guilt phase which instruction omitted the requirement of proof of intent. The trial court, over objection of the defendant, submitted Instructions S-3 and S-4 as follows.

¶140. Instruction S-3 stated:

The Court instructs the jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of the felony are binding upon all, and all are equally responsible for the acts of each in the commission of such felony.

¶141. Instruction No. S-4 stated:

> The Court instructs the jury that under the laws of the State of Mississippi anyone who aids, assists and encourages in the commission of a crime is deemed a principle (sic) to that crime. Therefore, if you find from the evidence in this case beyond a reasonable doubt that the Defendant, Anthony Doss, aided, assisted and encouraged another in the felonious crime of capital murder, then Anthony Doss is a principle (sic) to that crime.

¶142. Doss objected to the granting of S-3 on the basis that it did not require proof of his *mens rea* for the commission of the crimes for which he was charged, that is, murder and the underlying crime of robbery. *Fisher v. State*, 481 So. 2d 203, 212 (Miss 1985). Doss refers this Court to the recent case of *Welch v. State*, 566 So. 2d 680 (Miss. 1990), wherein this Court stated:

> To be convicted as an accessory the defendant must possess the *mens rea* for the commission of the crime. The precise state of mind of the defendant has great significance in determining the degree of his guilt. An accomplice may be convicted of accomplice liability only for those crimes as to which he personally has the requisite mental state. He must have a "community of intent" for the commission of the crime.

*Welch*, 566 So. 2d at 684.

¶143. Other states have reached the same conclusion. In *Tomlin v. State*, 591 So. 2d 550 (Ala. Crim.App. 1991), the Alabama Court of Criminal Appeals reversed a capital offense, holding that the trial court failed to instruct the jury properly on the issue of intent, stating:

> Under the accomplice liability doctrine, a nontriggerman accomplice may be convicted of the capital offense of double murder only if he had the particularized intent that both victims be killed. In addition, '[t]o affirm a finding of a 'particularized intent to kill' the jury must be properly charged on the intent to kill issue.

*Tomlin*, 591 So. 2d at 557 (citations omitted).

¶144. Doss now asserts that because of the allegedly erroneous instruction on accomplice liability at the guilt phase, which omitted the requirement of proof of intent, the jury's findings at the sentencing phase are too uncertain and unreliable to support the sentence of death. The constitutional requirement is set out in *Reddix v. Thigpen*, 728 F. 2d 705, 709 (5th Cir. 1984), which states:

> At the close of the presentation of evidence in the guilt phase of Reddix's trial, the state trial court instructed the jury regarding the law in Mississippi of accomplice responsibility, which allows any participant in the crime during which the killing occurs to be liable as a principal. ....A reasonable juror carefully heeding these instructions fairly could conclude that Jones's intent to commit murder may be imputed to Reddix. That imputation is exactly what *Enmund* and the eighth amendment prohibit in death penalty cases.

¶145. In *Cabana v. Bullock*, 474 U.S. 376 (1986) (overruled on other grounds in *Pope v. Williams*, 481 U.S. 497 (1987)), the United States Supreme Court addressed whether an accused's culpability for murder was sufficient under the Eighth Amendment to warrant a death sentence. The Court acknowledged that the defendant was entitled to have his guilt determined by a jury, but held that the decision of whether a particular punishment is appropriate was not one that required a jury

determination. *Enmund* did impose a 'substantive limitation on sentencing,' but it did not impose any particular form of procedure upon the states. The *Bullock* case, *supra*, was remanded to the Mississippi Court to determine whether Bullock was subject to the death penalty as one who has killed, attempted to kill, or intended that a killing take place or that lethal force be used.

¶146. On remand, this Court held that the decision of whether a particular punishment is appropriate in a given case is not one that we have ever required to be made by a jury. *Bullock v. State* 525 So. 2d 764, 767 (Miss. 1987). "Moreover, the decision whether a sentence is so disproportionate as to violate the Eighth Amendment .... has long been viewed as one that a trial judge or an appellate court is fully competent to make." *Id*.

¶147. In *Reddix v. State*, 547 So. 2d 792 (Miss. 1989), this Court found that the death sentence was disproportionate in light of the appellant's age (18 years), mental illness and mild retardation. Reddix was not the actual killer, although he was present at the scene. Similarly, in *Bullock v. State*, 525 So. 2d 764 (Miss. 1987), this Court found Bullock's death sentence disproportionate on facts virtually indistinguishable from those in *Reddix*. In *Bullock*, the actual killer had received a life sentence, and the only *Enmund* factor found by the jury was that the Bullock contemplated that lethal force would be used. On the other hand, this Court has affirmed the death penalty for nontrigger defendants where the facts indicated that that the defendant was the instigator, the planner or the mastermind who directed the death. *Stringer v. State*, 454 So. 2d 468 (Miss. 1984); *Ballenger v. State,* 667 So. 2d 1242 (Miss. 1995).

¶148. In this case Anthony Doss, a nineteen year old at the time of the crime, was not found to have been the triggerman or one who attempted to kill. Because he did not inflict the lethal blows, I would find the death penalty disproportionate, vacate the death penalty and impose a life sentence.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING:**

¶149. I concur with Presiding Justice Prather's dissent but write separately to state that I would also reverse on error number three.

¶150. In error number three Doss asserts that the trial court erred in making a comment in front of the jury during voir dire. He states that following a question made by the defense the trial court improperly interjected its opinion that the age of the defendant should not be considered by the jury in mitigation. Mississippi Code Annotated § 99-19-101(6)(g) specifically sets forth that the age of the defendant is a proper factor for the jury to consider in mitigation.

¶151. The majority holds that because the defense counsel failed to object contemporaneously to the prejudicial comment the issue is procedurally barred. This Court must ask itself "What is the very purpose of the contemporaneous objection rule?" Is not the primary function of the contemporaneous objection rule to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid injustice? A contemporaneous objection gives the trial court the opportunity to correct errors, but what if the judge created the error himself? This Court has addressed this issue before. "The great danger, particularly in a criminal case, is that the weight and dignity of the court accompanies each question or comment, although not

so intended by the judge, and are very likely to be interpreted by the jury as the court's approval . . . thus diverting the jurors' attention from their responsibility of deciding the case from the evidence. . . ." **Thompson v. State**, 468 So. 2d 852, 854 (Miss. 1985). "There can be no doubt the statute and cases enjoin comment by a judge upon the evidence because the very position of a judge during trial makes each comment unusually susceptible of influencing a juror or the jury." **Hannah v. State**, 336 So. 2d 1317, 1321 (Miss. 1976).

> It is a tribute to our judicial system that the words and actions of trial judges have great weight with trial juries. They observe closely the judge's actions and weigh carefully his words, and are greatly influenced by what they think are his reactions. It is impossible to ascertain the weight and influence of the testimony of the trial judge with the jurors. The jurors are subordinate to the judge. He has large control over them. . . . It is the supreme duty of a trial judge, in so far as it is humanly possible, to hold the scales of justice evenly balanced between the litigants. As a witness, regardless how careful and conscientious he may be, he necessarily takes on the appearance of a partisan, endeavoring to uphold by his testimony one side against the other, and to some extent at least detracts from the dignity and impartiality of his office.

**West v. State**, 519 So. 2d 418, 422 (Miss. 1988) (quoting **Brashier v. State**, 197 Miss. 237, 242-43, 20 So. 2d 65, 66-67 (1944)).

> The officers of a court, and especially the judge, . . . because of the attributes of [his] office[] . . . . unconsciously exert[s] tremendous influence in the trial of a case, and [he] should be astutely careful so that unintentionally the jurors are not improperly influenced by [his] words and actions.

**Stallworth v. State**, 310 So. 2d 900, 902 (Miss. 1975) (quoting **Roberson v. State**, 185 So. 2d 667, 670 (Miss. 1966)).

> [W]e do point out that comment upon the evidence by a trial judge in the presence of the jury is hazardous to affirmance on appeal. **See Green v. State**, 97 Miss. 834, 53 So. 415 (1910), wherein this Court stated: It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge . . . and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury, to avoid prejudice to either party. 21 Encyc. P. & P. 994, 995, and notes. The court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption.

**Shore v. State**, 287 So. 2d 766, 769 (Miss. 1974).

¶152. Even though a civil case, the language contained in **Nichols v. Munn**, 565 So. 2d 1132 (Miss. 1990), is helpful to clarify this point. In **Nichols** this Court said that an attorney is not held to the same degree of diligence in making an objection to a judge's comments that he is in making other objections, since a judge interjects himself into a trial by his own volition. **See also Wirtz v. Switzer**,

586 So.2d 775, 782 (Miss. 1991).

> We have recognized the danger that a trial judge generates by indicating or showing his attention to certain matters in the trial which may communicate to the jury the impression that such evidence or testimony is important or unimportant, and the very position of a judge during trial makes each comment unusually susceptible of influencing a juror or the jury.

*Wirtz*, 586 So. 2d at 783 (quoting *West v. State*, 519 So. 2d 418, 423 (Miss. 1988)) (citing *Shelton v. Puckett*, 483 So. 2d 354 (Miss. 1986); *Hannah v. State*, 336 So. 2d 1317 (Miss. 1976), *cert. denied*, 429 U.S. 1101 (1977); *Thompson v. State*, 468 So. 2d 852 (Miss. 1985); *Stubbs v. State*, 441 So. 2d 1386 (Miss. 1983); *Fulgham v. State*, 386 So. 2d 1099 (Miss. 1980); *Myers v. State*, 99 Miss. 263, 54 So. 849 (1911)). A trial judge should not in any way "inadvertently communicate to the jury his opinion regarding the value or credibility" of a mitigating factor. *Shelton v. Puckett*, 483 So. 2d 354, 357 (Miss. 1986); *Wirtz*, 586 So. 2d at 783.

> The circuit judge injecting himself into a trial, however, does so by his own deliberative intent, and he is at least supposed to know better. He should not need to be told by trial counsel that he has exceeded propriety or deviated from probity. We therefore need not hold trial counsel to precisely the same degree of diligence. . . .

*Nichols*, 565 So. 2d at 1137.

¶153. The State argues that even if we waive the procedural bar, the judge's comment was directed at the prosecution and not the jury. I do not feel it is at all clear that the judge was directing his comments to the prosecution, and even if he was, it does not matter. Here the judge stated that he did not think it (presumably the age of the defendant) makes any difference. The jury was present and prejudiced by such a remark coming from the judge.

¶154. In *People v. Mays*, 544 N.E.2d 1264 (Ill. App. Ct. 1989), the Illinois court stated why it does not apply the contemporaneous objection rule to an attorney when the judge makes an improper comment.

> The making of an objection to questions or comments by a judge poses a practical problem for the trial lawyer. It can prove embarrassing to the lawyer, but, more importantly, assuming that most juries view most judges with some degree of respect, and accord to them a knowledge of law somewhat superior to that of the attorneys practicing before the judge, the lawyer who objects to a comment or question by the judge may find himself viewed with considerable suspicion and skepticism by the very group whom he is trying to convert to his client's view of the facts, thereby perhaps irreparably damaging his client's interests. If he fails to object, he may, on appeal, be faced, as defendant here is, with the claim that his failure to act has precluded consideration of the error, and it is not always a sufficient answer to this situation to say that the objection can be made and ruling secured outside the hearing of the jury. It is particularly incumbent upon the trial judge to exercise a higher degree of care in his comments regarding, or interrogations of, witnesses before a jury in order to avoid influencing the jurors to any extent, and we therefore hold that a less rigid application of the rule requiring timely and proper objection and preservation of rulings thereon should prevail where the basis for the objection is the conduct of the trial judge than is otherwise required.

*Mays*, 544 N.E.2d at 1271 (quoting *People v. Sprinkle*, 189 N.E.2d 295, 297 (Ill. 1963)). That Court's reasoning is applicable in the case here.

¶155. In *Nichols* this Court held that when the circuit court judge was clearly wrong in the manner in which he injected himself into the lawsuit plain error was committed and we required reversal. *Nichols*, 565 So. 2d at 1137 (citing *Travelers Indem. Co. v. Rawson*, 222 So. 2d 131, 136-37 (Miss 1969); *Young v. Anderson*, 249 Miss. 539, 163 So. 2d 253 (1964); *Sivley v. Sivley*, 96 Miss. 137, 51 So. 457 (1910)).

¶156. I am as equally unpersuaded in reviewing the majority's argument that the impermissible comment made by the judge was subsequently cured by the submission of a written instruction as to mitigating circumstances. I cannot visualize any real curing effect the later given jury's instruction had on this unfortunate comment.

¶157. By making the statement that the age mitigating factor does not make any difference the judge "rang the bell." The judge made no comment to correct this gross misstatement of the law and he allowed this impermissible statement to hang above the jury throughout the trial of the defendant. Much later the court gave the jury an instruction giving the mitigating factor of age. This is a case where the prejudicial effect of what the jury heard could not be eradicated by a later written instruction. By its very nature when a judge makes an inappropriate comment, the possibility for harm is magnified. Since the advent of television we have become a society of the spoken word, not the written word. What the jury heard from the judge's mouth far over shadows what it may have read from his hand.

¶158. To cure such error the trial judge must do more than provide a cursory instruction to the jury merely to consider age as a mitigating circumstance. The court's remark was an intimation that the particular mitigator was inadmissible or an indication that it was unworthy of consideration. I would conclude that the comment of the trial judge which intimated the bias of the court with respect to the weight of a mitigating factor cannot be corrected by subsequent instruction and was prejudicially fatal.

**McRAE, J., JOINS THIS OPINION.**

**BANKS, JUSTICE, DISSENTING:**

¶159. I join the opinion of Presiding Justice Prather. I write to also note my adherence to the views expressed in *Blue v. State*, No. 93-DP-00534-SCT (Miss. 1996), regarding the failure to give a requested instruction directing individual consideration of mitigating factors. Those views apply equally to this case.

**SULLIVAN, P.J., JOINS THIS OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶160. Although I do not join in concurrence with Justice Prather, I agree with Justice Sullivan to the extent he concludes that the comments made by the trial judge in regard to age as a mitigating factor were prejudicial and constituted reversible error.

# APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Holly v. State*, No. 93-DP-00263-SCT (Miss. Feb. 8, 1996).

*Russell v. State*, No. 93-DP-00418-SCT (Miss. Dec. 7, 1995).

*Walker v. State*, No. 92-DP-00568-SCT (Miss. Oct. 12, 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

*\*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi,* 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State*, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d 165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi*, 494 U.S. 1075 (1990) vacating and remanding *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).

***Jones v. State**, 517 So. 2d 1295 (Miss. 1987)**, Jones v. Mississippi***, 487 U.S. 1230 (1988) vacating and remanding, ***Jones v. State***, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So. 2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

## DEATH CASES REVERSED AS TO GUILT PHASE

## <u>AND SENTENCE PHASE</u>

*Giles v. State,* 650 So. 2d 846 (Miss. 1995)

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994)

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994)

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

*Houston v. State*, 531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

## DEATH CASES REVERSED

## AS TO PUNISHMENT AND REMANDED

## FOR RESENTENCING TO LIFE IMPRISONMENT

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

## DEATH CASES REVERSED AS TO

## PUNISHMENT AND REMANDED FOR A NEW TRIAL

## <u>ON SENTENCING PHASE ONLY</u>

*Taylor v. State*, No. 90-DP-01346-SCT (Miss. Sept. 28, 1995).

**\*Shell v. State**, 554 So. 2d 887 (Miss. 1989), **Shell v. Mississippi**, 498 U.S. 1 (1990) reversing, in part, and remanding, **Shell v. State** 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

\***Pinkney v. State**, 538 So. 2d 329 (Miss. 1989), **Pinkney v. Mississippi,** 494 U.S. 1075 (1990) vacating and remanding, **Pinkney v. State,** 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

**\*Clemons v. State**, 535 So. 2d 1354 (Miss. 1988), **Clemons v. Mississippi**, 494 U.S. 738 (1990) vacating and remanding, **Clemons v. State**, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

**\*Jones v. State**, 517 So. 2d 1295 (Miss. 1987), **Jones v. Mississippi,** 487 U.S. 1230 (1988) vacating and remanding, **Jones v. State**, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

1. Doss previously pled guilty to second degree murder in Memphis Tennessee for killing Tommy White on May 6, 1991, in Shelby County Tennessee. This murder occurred hours later on the same day as the offense charged in this case.

2. The foregoing is the first choice the jury had available. The other two choices were (1) "We, the jury, find that the defendant should be sentenced to life imprisonment."

(2) "We, the jury, are unable to agree unanimously on punishment."

3. Freddie was tried in a separate trial for the same offense as Doss. "Freddie" is used for the purpose of this opinion, as opposed to Bell, because the last name of the victim was Bell as well; Robert C. "Bert" Bell. There is no relation. Coffey was a witness in Freddie's trial.

4. James, and Coffey, testified as State witnesses in Doss's trial during the guilt phase. Coffey also testified during the sentencing phase of Doss's trial. Doss testified in his own behalf during the guilt phase only.

5. James testified that they did not go behind the counter at that time and touch the coke box. The significance is that following Bell's death, Doss's prints were found on the coke box which is behind the counter where Bell, the cash register, .38 caliber with shells, and money bag were located.

6. All three guns were successfully test-fired during the pre-trial ballistics testing. However, Doss was still permitted to use this as a mitigating factor during the sentencing phase. The State forensic scientist, John Michael Allen of the Mississippi Crime Laboratory, matched five of the nine bullet holes in the victim to the .38 caliber pistol. Three of the remaining four shots retrieved from the body were matched to the point of leading Allen to the position that they were very similar but that there simply were not enough reproducible characteristics to make a 100% match as was done with the .38.

7. Doss was allowed to use the "extreme duress or substantial domination" mitigating factor.

8. The State's forensic pathologist witness, Dr. Stephen Hayne, testified that Bell had three shots in and through his hands from apparently trying to deflect bullets.

9. Doss's police station statement and in-court testimony are very different.

10. Doss used this act as a mitigating factor during the sentencing phase.

11. Gladney, Doss, Coffey and Freddie were all indicted in Tennessee in July 1991 for robbing and killing Tommy White.

12. Doss's cross-examination also revealed that he never told the police that Freddie threatened him or that he was scared until his in-court testimony. Additionally, Doss admitted that he went to Memphis so that he would not get caught.

13. The .22 and .38 caliber pistols were recovered from Freddie's house and the .25 caliber was recovered from Bernard Gladney's car.

14. Doss had two refused instructions, D-9 and D-10, which instructed the jury that it should deliberate on the issue of the lesser crime of robbery alone should they find that the State failed to prove all of the elements of murder. Instruction S-1-A is the submitted instruction on the elements of armed robbery which the jury used. Instruction C-1 instructed the jury to consider all of the instructions as a whole.

15. However, the sentencing form in the record reflects that the jury unanimously found (1) that Doss intended that the killing take place and (2) that lethal force was contemplated during the robbery. Therefore, the jury found *mens rea*.

16. The comment by the judge is alleged to override Mississippi law because Miss. Code Ann. Section 99-19-101(6)(g) specifically sets forth age as a mitigating factor.

17. Sentencing Instruction C-1 lists age as the first mitigating factor.

18. We take notice of the fact that no one spoke up when generally most would have, regardless of the fact that these were judge's statements, because capital murder is involved.

19. The Court Papers also disclose that this issue was not raised by Doss in his motion for acquittal notwithstanding the verdict and in the alternative for a new trial.

20. Doss relies upon the 5.06/10.01 argument used ***infra***.

21. Former Rule 5.06 of the Mississippi Uniform Criminal Rules of Circuit Court has subsequently been changed. Former Rule 5.06 is now Rule 10.01, Jury Selection, of the Uniform Circuit and County Court Rules. The change in the rule was adopted effective May 1, 1995. The language of former Rule 5.06 relied upon by Doss has been amended.

22. It is the absence in the record of what was said by whom before the cause strikes began that creates the vagueness.

23. The *Miller* Court reversed and remanded a grand larceny conviction where the sheriff told the young unsuspecting black defendant that he was better off by telling the truth. This was held by the Court to be an impermissible method of inducement under the circumstances. Such a statement by the sheriff was found by this Court to make Miller's confession involuntary. *Miller v. State*, 243 So. 2d 558, 559 (Miss. 1971). However, this Court has also found similar types of statements by a sheriff to be "mere exhortations to tell the truth" and not implied promises where the defendant has been more familiar with the justice system and the officers involved. *Willie v. State*, 585 So. 2d 660, 668 (Miss. 1991).

24. Doss denied that he knew shooting was going to take place, but admitted that he went into the store to rob it.

25. *Davis* was superseded by Rule as stated in *Williams v. State*, 595 So. 2d 1299, 1308 (Miss. 1992). *Williams* recognized the "relaxation" of *Davis*.

26. Issue XII is also addressed in Doss's Reply Brief. However, it only addresses the sufficiency of the evidence regarding the submission of the instruction; not the lack of an accompanying limiting instruction.

27. Facts 2, 3, and 5 were denied by Doss during trial.

28. C-1's second aggravator reads as follows. "The capital murder of Robert C. "Bert" Bell was committed while the defendant was engaged or was an accomplice, in the commission of armed robbery."

29. The Court in *Willie v. State*, 585 So. 2d 660, 680-681 (Miss. 1991) modified the *Ladner* holding and overruled the *Wiley* progeny cases permitting the use of robbery and pecuniary gain as aggravators together to prohibit the conjunctive use of these aggravators. However, this is not the argument made by Doss here as pecuniary gain was not used as an aggravator.

30. The Court's prior holding on 'heinous, atrocious, and cruel' aggravators in *Pinkney v. State*, 538 So. 2d 329 (Miss. 1988) was vacated by the United States Supreme Court in 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) and remanded to this Court which decided and remanded the matter for resentencing in 602 So. 2d 1177 (Miss. 1992).

31. *State v. McKinney*, 603 S.W.2d 755, 758 (Tenn.Cr.App. 1980) holds that second degree murder is a non-capital felony.

32. Doss contends that should the Court find that this aggravator was impermissibly submitted to the jury, that the case would have to be reversed because some jurors may have found different aggravators thereby violating his constitutional right to a unanimous jury verdict under *United States v. Ford*, 872 F.2d 1231, 1237 (6th Cir. 1989). However, this argument is without weight in light of the sentencing form which states that the jurors unanimously found all three of the listed aggravators.

33. *Chase* provided a quote from *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987) wherein this Court stated: "If no contemporaneous objection is made, the error, if any, is waived. This rule is not diminished in a capital case." Cole has subsequently had his case remanded for resentencing by this Court when it granted his PCR request because of the use of the "heinous, atrocious and cruel"

aggravator which was used in his trial without a limiting instruction. See 666 So. 2d 767 (Miss. 1995).

34. The *Shell* Court was looking at the disjunctive language of "heinous, atrocious or cruel."

35. During sentencing deliberations, the jury sent a note to the trial judge asking him if they had the option of sentencing Doss to life without parole. The judge responded that it had given them "all the instructions I can give you."

36. However, Doss was sentenced under the pre-1994 version of § 99-19-101 which did not provide for life without parole.

37. The *Stringer* holding used by Doss comes from *Coleman v. State*, 378 So. 2d 640, 648 (Miss. 1979), wherein, the Court held that "[i]n the sentencing phase of the capital murder trial, the State is limited to offering evidence that is relevant to one of the aggravating circumstances included in § 99-19-101." *Stringer* actually involved the introduction of prior non-violent misdemeanor convictions to impeach his testimony regarding a mitigating circumstance which the Court held to be proper; not the permitting of the jury to consider the detailed circumstances of the crime convicted. *Stringer*, 500 So. 2d at 941.

38. See *Jordan v. State*, 518 So. 2d 1186 (Miss. 1987) for disposition in light of *Jordan v. Mississippi*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986) with regard to the exclusion of mitigating evidence.

39. D-S3 used boxes for the jury to check.

40. The "individualized consideration" language comes from *Enmund* wherein the United States Supreme Court held that the proper inquiry by a jury should be upon the particular defendant's culpability and not that of those who committed the robbery and shot the victims. *Enmund* is quite distinguishable from this case in that Doss was found to have "intended the killing take place" and "contemplated that lethal force would be used" whereas Enmund's jury did not find that he killed or attempted to kill or any proof that Enmund had any culpable mental State. *Enmund v. Florida*, 458 U.S. 782, 798 (1982); *See Tison v. Arizona,* 107 S.Ct. 1676, 1683-84 (1987).

41. As can be seen from this excerpt, Doss did not object on the ground that C-1 did not require the jury to find Doss's particularized intent.

42. Such is a difficult argument today in light of *Ballenger v. State*, 1995 WL 560011 (Miss.). This Court, 9-0, upheld the death sentence against Ballenger where she was the instigator accomplice, but not the "trigger-person." Basic felony-murder jurisprudence does not require that a defendant be the trigger-person to be found guilty of capital murder when a death occurs during the commission of a felony.

43. Doss contends that the improper statements by the prosecutor can not be held harmless because this is a death penalty case. *Irving v. State*, 361 So. 2d 1360, 1363 (Miss. 1978).

44. This is alleged as a prejudicial misstatement by Doss because it is true that Doss was only tried for one murder in this case. Doss had already pled guilty to second-degree murder in Tennessee.

Therefore, while it is true that this was not a case where two lives were taken for which Doss was being tried, the other murder was an aggravator which could in some interpretation make this a case of two lives having been taken.

45. This Court upheld a procedural bar against *Ballenger* on this very claim. 1995 WL 560011, *33; *See also Hansen*, 592 So. 2d at 140; *Cole v. State*, 525 So. 2d 365, 369 (Miss. 1987).

46. The Court finds that this excerpt does not contain any facts not in evidence except possibly the "we're going to kill Bert Bell" portion. There was evidence that the jury could have inferred such from, but not any explicit testimony that Doss had formed the specific intent to kill Bell particularly before entering the store.

47. Doss used the Bible to argue that God did not support the death penalty.

48. Reddix was subsequently granted Habeas Corpus by *Reddix v. Thigpen*, 554 F.Supp. 1212 (S.D.Miss., Jan 20, 1983) which was affirmed in part and reversed in part and remanded by *Reddix v. Thigpen*, 728 F.2d 705 (5th Cir.(Miss.)) (1984). The 728 F.2d 705 decision was based upon the fact that the State had failed to prove that Reddix had the criminal intent to commit the murder or the requisite *Enmund* intent to be sentenced to death. Request for a rehearing of this decision and certiorari were denied respectively. *Reddix v. Thigpen*, 732 F.2d 494 (5th Cir.(Miss. 1984)) and *Thigpen v. Reddix*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). Such is not the case with Doss as two *Enmund* factors were found by the jury.

49. The Court very recently affirmed a death sentence against an instigator non-trigger defendant in *Ballenger v. State*, 667 So. 2d 1242 (Miss.1995).